Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/20/2017 08:08 AM CST

State of Nebraska, appellee, v.
Nicholas J. Ely, appellant.
___ N.W.2d ___

Filed January 20, 2017.    No. S-16-471.

1.  **Postconviction: Appeal and Error.** Whether a claim raised in a post-conviction proceeding is procedurally barred is a question of law.
2.  **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusion.
3.  **Affidavits: Appeal and Error.** A district court's denial of in forma pauperis status under Neb. Rev. Stat. § 25-2301.02 (Reissue 2016) is reviewed de novo on the record based on the transcript of the hearing or written statement of the court.
4.  **Postconviction: Right to Counsel: Appeal and Error.** Failure to appoint counsel in a postconviction proceeding is not error in the absence of an abuse of discretion.
5.  **Judges: Recusal: Appeal and Error.** A motion to recuse for bias or partiality is initially entrusted to the discretion of the trial court, and the trial court's ruling will be affirmed absent an abuse of that discretion.
6.  **Postconviction.** The need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity.
7.  **Postconviction: Appeal and Error.** A motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and could have been litigated on direct appeal.
8.  **Postconviction: Effectiveness of Counsel: Appeal and Error.** When a defendant was represented both at trial and on direct appeal by the same counsel, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief.
9.  **Postconviction: Effectiveness of Counsel: Proof: Appeal and Error.** When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court must determine whether the petitioner has alleged facts that would support a claim of ineffective

assistance of counsel and, if so, whether the files and records affirmatively show that he or she is entitled to no relief.

10. ____: ____: ____: ____. To establish a right to postconviction relief because of counsel's ineffective assistance, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. A court may address the two prongs of this test, deficient performance and prejudice, in either order.

11. **Trial: Effectiveness of Counsel: Prosecuting Attorneys: Appeal and Error.** Determining whether defense counsel was ineffective in failing to object to prosecutorial misconduct requires an appellate court to first determine whether the petitioner has alleged any action or remarks that constituted prosecutorial misconduct.

12. **Trial: Prosecuting Attorneys: Juries.** A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct.

13. **Trial: Prosecuting Attorneys.** A prosecutor is entitled to draw inferences from the evidence in presenting his or her case, and such inferences generally do not amount to prosecutorial misconduct.

14. **Jury Instructions.** In construing an individual jury instruction, the instruction should not be judged in artificial isolation but must be viewed in the context of the overall charge to the jury considered as a whole.

15. **Effectiveness of Counsel: Jury Instructions.** Defense counsel is not ineffective for failing to object to jury instructions that, when read together and taken as a whole, correctly state the law and are not misleading.

16. **Effectiveness of Counsel.** As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument.

17. **Attorney and Client: Conflict of Interest: Words and Phrases.** The phrase "conflict of interest" denotes a situation in which regard for one duty tends to lead to disregard of another or where a lawyer's representation of one client is rendered less effective by reason of his or her representation of another client.

18. **Postconviction: Effectiveness of Counsel: Appeal and Error.** A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review.

19. **Effectiveness of Counsel: Appeal and Error.** When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel actually prejudiced the defendant. That is, courts begin by assessing the strength of the claim appellate counsel failed to raise.

20. **Constitutional Law: Right to Counsel: Waiver.** A criminal defendant has a constitutional right to waive the assistance of counsel and conduct his or her own defense under the Sixth Amendment and Neb. Const. art. I, § 11.

21. ____: ____: ____. In order to waive the constitutional right to counsel, the waiver must be made knowingly, voluntarily, and intelligently.

22. **Right to Counsel: Waiver.** A waiver of counsel need not be prudent, just knowing and intelligent.

23. **Rules of Evidence: Presumptions.** References to "presumptions" in Neb. Rev. Stat. § 27-303 (Reissue 2016) necessarily include "inferences."

24. **Constitutional Law: Trial: Witnesses.** The right to confrontation is not unlimited, and only guarantees an opportunity for effective cross-examination, not examination that is effective in whatever way and to whatever extent the defense may wish.

25. **Trial: Testimony.** When the object of the cross-examination is to collaterally ascertain the accuracy or credibility of the witness, the scope of the inquiry is ordinarily subject to the discretion of the trial court.

26. **Postconviction: Justiciable Issues: Right to Counsel.** When the defendant's petition presents a justiciable issue to the district court for postconviction determination, an indigent defendant is entitled to the appointment of counsel.

27. **Judges: Recusal: Appeal and Error.** A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law.

28. **Judges: Recusal.** A trial judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice is shown.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Affirmed in part, and in part reversed and remanded with directions.

Brian S. Munnelly for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Cassel, J.

## I. INTRODUCTION

Nicholas J. Ely appeals from an order denying his motions for postconviction relief, appointment of counsel, leave to proceed in forma pauperis, and recusal of the trial judge. The district court determined that Ely's postconviction claims were procedurally barred. We agree that some were barred. And the files and records affirmatively show that Ely was entitled to no relief on many of the other claims. But two claims were not barred and warranted an evidentiary hearing. This, in turn, drives our disposition of the other issues on appeal.

## II. BACKGROUND

Ely was involved in an attempted robbery with several other individuals in which the target of the robbery was killed. Because of his involvement, Ely was ultimately convicted by a jury of first degree murder (felony murder) and use of a deadly weapon to commit a felony. He was sentenced to life in prison on the murder conviction and to a consecutive sentence of 5 to 5 years' imprisonment on the use of a deadly weapon conviction. The circumstances which led to Ely's convictions and sentences may be found in our opinion on direct appeal.[1]

### 1. Direct Appeal

On direct appeal, represented by the same counsel as he was at trial, Ely assigned that (1) there was insufficient evidence to sustain the guilty verdicts, (2) the district court erred in sustaining the State's motion in limine and excluding evidence of

---

[1] *State v. Ely*, 287 Neb. 147, 841 N.W.2d 216 (2014).

prior illegal conduct by a codefendant, and (3) the district court erred in giving a "flight" instruction to the jury. We affirmed his convictions and sentences, modifying only his credit for time served by applying it to the use of a deadly weapon sentence.[2] Ely has since filed a motion and an amended motion for postconviction relief and now appeals from the denial of his motions.

## 2. POSTCONVICTION PROCEEDING

Ely filed his first pro se motion for postconviction relief and alleged numerous claims of ineffective assistance of trial counsel, several claims of district court error, and numerous claims of ineffective assistance of appellate counsel. He stated in his motion for postconviction relief that his counsel on direct appeal was the same counsel he had at trial. Ely also filed a motion for appointment of counsel, a motion for leave to proceed in forma pauperis, and a poverty affidavit in support of his motions.

While his first motion was pending and before the State filed a response, Ely filed a motion for leave to file an amended motion for postconviction relief. He additionally filed a motion for the court to recuse itself from his postconviction proceeding and his amended motion for postconviction relief. In his amended motion, Ely again alleged numerous claims of ineffective assistance of trial counsel, several claims of district court error, and numerous claims of ineffective assistance of appellate counsel. Comparing the amended motion to the original motion, Ely did not allege any new claims and did not state any new facts in support of his claims. The district court ruled on both the original and the amended motions for postconviction relief. The 29 errors assigned in the amended motion are summarized and reordered as follows:

(1) The district court abused its discretion by (a) denying Ely's request to dismiss counsel and proceed pro se,

_____

[2] *Id.*

(b) sustaining the State's oral motion in limine to prevent Ely from cross-examining codefendants about the possible life sentences they faced, (c) denying Ely's motion to have personal access to his discovery, and (d) denying Ely his privilege to depose the State's witnesses.

(2) Ely was denied effective assistance of trial counsel when trial counsel (a) failed to advise Ely of his right to testify in his own behalf; (b) failed to object to testimony concerning prior bad acts; (c) failed to suppress the search of a cell phone linked to Ely, due to an illegal search warrant; (d) failed to inform the jury of Nicholas Palma's deal to testify for the State; (e) failed to object to or move to strike Palma's prejudicial testimony after it did not fulfill what the State said it would; (f) failed to make reasonable investigations involving defense witnesses; (g) failed to object to the State's prejudicial remarks during closing arguments; (h) failed to object and/or add to the jury instruction regarding intent; (i) failed to object to jury instruction No. 20, regarding "accomplice testimony," for leaving out certain language; (j) failed to object to jury instruction No. 17 for leaving out language that would pertain to Ely; (k) failed to depose witnesses Ely had asked them to depose; (l) failed to cross-examine State witnesses efficiently; (m) failed to object to or move to strike Jacob Wilde's testimony after it was discovered Wilde did not know about Ely's involvement in the robbery and homicide; (n) failed to go over all the evidence with Ely before trial; (o) failed to adequately explain Ely's defense during opening statements and closing arguments; and (p) had a conflict of interest with Ely.

(3) Ely was denied effective assistance of counsel on direct appeal when appellate counsel (a) failed to argue that the district court erred by denying Ely his right to proceed pro se, (b) argued on appeal a jury instruction that did not reflect the instruction given at trial, (c) failed to argue relevant issues pertaining to the prejudicial "flight" instruction given at trial, (d) failed to argue Ely's confrontation rights were violated,

(e) failed to argue that evidence was ruled admissible pursuant to Neb. Rev. Stat. § 27-404 (Reissue 2016) in a codefendant's first trial but inadmissible in Ely's trial, (f) failed to argue that Palma's testimony did not fulfill what the State said it would, (g) failed to argue that the district court erred by denying Ely's motion to have personal access to his discovery, (h) failed to argue that the district court erred by denying Ely his privilege to depose the State's witnesses, and (i) had a conflict of interest with Ely.

The district court, without holding an evidentiary hearing, denied Ely's motions, finding that the issues raised in the motions for postconviction relief "were known and/or knowable at the time of his direct appeal and, therefore, the motions . . . should be overruled and denied." The court denied Ely's other motions for appointment of counsel, to proceed in forma pauperis, and for recusal. The court's order denying Ely's motions did not state that Ely had failed to allege sufficient facts to demonstrate a violation of his constitutional rights or that the record and files affirmatively showed that he was entitled to no relief. The order instead seems to rest entirely on the court's finding that the issues raised in the motion for postconviction relief were procedurally barred.

Ely timely appeals.

## III. ASSIGNMENTS OF ERROR

Ely assigns, restated, renumbered, and reordered, that the district court erred in (1) denying his motion for postconviction relief without an evidentiary hearing, (2) denying his motion to proceed in forma pauperis, (3) denying his motion for appointment of counsel, and (4) denying his motion for recusal.

## IV. STANDARD OF REVIEW

[1,2] Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law.[3] When reviewing

---

[3] *State v. Harris*, 294 Neb. 766, 884 N.W.2d 710 (2016).

questions of law, an appellate court resolves the questions independently of the lower court's conclusion.[4]

[3] A district court's denial of in forma pauperis status under Neb. Rev. Stat. § 25-2301.02 (Reissue 2016) is reviewed de novo on the record based on the transcript of the hearing or written statement of the court.[5]

[4] Failure to appoint counsel in a postconviction proceeding is not error in the absence of an abuse of discretion.[6]

[5] A motion to recuse for bias or partiality is initially entrusted to the discretion of the trial court, and the trial court's ruling will be affirmed absent an abuse of that discretion.[7]

## V. ANALYSIS

### 1. Motion for Postconviction Relief

[6,7] The need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity.[8] Therefore, a motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and could have been litigated on direct appeal.[9] Ely alleged claims of district court error that, as he notes in his other assignments of error, were known and could have been litigated on direct appeal by his appellate counsel. Accordingly, Ely's claims of district court error were procedurally barred and the district court did not err in denying postconviction relief on the basis of those claims.

[8] We reach a different conclusion concerning Ely's claims of ineffective assistance of trial counsel and appellate counsel. When a defendant was represented both at trial and on direct

---

[4] *Id.*

[5] *State v. Carter*, 292 Neb. 16, 870 N.W.2d 641 (2015).

[6] *State v. Robertson*, 294 Neb. 29, 881 N.W.2d 864 (2016).

[7] *State v. Kofoed*, 283 Neb. 767, 817 N.W.2d 225 (2012).

[8] *State v. Parnell*, 294 Neb. 551, 883 N.W.2d 652 (2016).

[9] *Id.*

appeal by the same counsel, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief.[10] As the State concedes, the record shows that Ely was represented by the same counsel on direct appeal as he was at trial. Therefore, Ely's motion for postconviction relief was his first opportunity to assert such a claim. For this reason, Ely's claims of ineffective assistance of counsel are not procedurally barred.

[9] When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court must determine whether the petitioner has alleged facts that would support a claim of ineffective assistance of counsel and, if so, whether the files and records affirmatively show that he or she is entitled to no relief.[11] We shall address each allegation of ineffective assistance of counsel in turn.

### (a) Ineffective Assistance of Trial Counsel

[10] To establish a right to postconviction relief because of counsel's ineffective assistance, the defendant has the burden, in accordance with *Strickland v. Washington*,[12] to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[13] Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case.[14] To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been

---

[10] See *State v. Armendariz*, 289 Neb. 896, 857 N.W.2d 775 (2015).

[11] *State v. Robertson, supra* note 6.

[12] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[13] *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015).

[14] *Id.*

different.[15] A court may address the two prongs of this test, deficient performance and prejudice, in either order.[16]

### (i) Failure to Advise Ely of Right to Testify

Ely alleged that trial counsel "failed to provide objectively reasonable advice" so that he could waive his right to testify. His motion included reference to specific testimony that he would have given, had trial counsel properly advised him of his right to testify. As the State concedes, these allegations are sufficient to raise a factual issue of whether a Sixth Amendment violation occurred and the files and records do not affirmatively show Ely is entitled to no relief. Accordingly, an evidentiary hearing is warranted on this claim.

### (ii) Allegations Concerning Text Message Evidence

Ely asserted two allegations of inefficiency of trial counsel related to text messages entered into evidence. First, he alleged that trial counsel failed to object to testimony concerning text messages sent to and from his cell phone the day before the robbery. Ely asserted that the text messages were prior bad acts testimony and inadmissible pursuant to § 27-404(2). He additionally asserted that the State improperly used the text messages to show his intent and that the text messages were prejudicial to the outcome of his trial.

One of the text message exchanges read: "'Wsup wita lick bro.' ["Lick" is slang for a robbery.] 'Don't know man. I'm not out and about that much.' 'Me either but I need some $$.'" Another text message, sent from Ely's cell phone, read: "''and shit hard cuz being broke aint fun, bills gotta be paid and I aint trying to go to prison for robbing but I feel like there aint many other choices.'"

---

[15] *Id.*

[16] *Id.*

Second, he alleged that trial counsel failed to suppress the same text messages as the product of a search of his cell phone obtained from an illegal search warrant. He argued that there was no probable cause to search the cell phone or the "SIM" memory card. He also argued that the search warrant was improper because it applied to six other individuals' cell phones and did not specify, with particularity, the place to be searched. The record shows that the investigating sergeant obtained the cell phone records for Ely's cell phone directly from his cell phone provider by submitting a search warrant to the company. A separate data download was performed on Ely's cell phone, but all the evidence was provided by the cell phone provider.

In reviewing the record and these text messages, it is clear that they were properly admitted and were not improper prior bad acts testimony used to prove Ely's character. The text messages were obtained from the cell phone provider. And Ely did not allege that the search warrant to the cell phone provider was illegal. Furthermore, the testimony concerning the text messages was properly admissible to show proof of motive, intent, and a plan. Therefore, the files and records affirmatively show that Ely is entitled to no relief on this claim.

### (iii) Allegations Concerning
### Palma's Testimony

Ely alleged that trial counsel failed to inform the jury that the State promised Palma that the "mother of his child" would not have to testify if he testified. He argued that this weighed on Palma's credibility as a witness when Palma initially refused to testify, because the State "broke" the deal. Ely also alleged that trial counsel later failed to object to Palma's testimony after he did not testify to knowing why Ely left Omaha, Nebraska, and went to Sioux City, Iowa, after the robbery. We find that Ely has failed to allege facts that would support either claim and that the files and records affirmatively show that he is entitled to no relief on either claim.

First, the record shows that the State made the identified deal with Palma to testify as a witness at a codefendant's trial, but that the deal did not continue to Ely's trial. Thus, the deal in the previous trial was irrelevant. Furthermore, when Palma eventually testified, trial counsel elicited testimony that he had been granted immunity in exchange for his testimony. This was confirmed by the State outside of the presence of the jury. Palma additionally testified that the State threatened to charge him with accessory to murder if he did not testify. This deal would certainly weigh on the witness' credibility to testify truthfully—more so than a deal that was not relevant to Ely's trial.

Second, Palma testified that Ely told him "they had gone to do a robbery . . . and things went wrong." Palma also testified that sometime after this conversation, Ely called him and said that he was getting ready to leave Omaha. This evidence goes directly to the occurrence of a crime and Ely's voluntary flight after the occurrence of a crime—evidence of Ely's consciousness of guilt. Therefore, the testimony was proper and Ely's trial counsel had no grounds on which to object to Palma's testimony.

### (iv) Allegation Concerning Failure to Investigate Defense Witnesses

Ely alleged that trial counsel failed to make reasonable investigations involving defense witnesses. Ely argued that trial counsel should have investigated Steve Kaiser and Taylor Sporven as possible defense witnesses and that their testimony would have changed the outcome of the trial. Ely alleged that if Kaiser had been called to testify, he would have testified that Ely was not the one who texted him, "'Wsup wita lick bro.'" And, if Sporven had been called to testify, she would have testified that Ely's text message stating, "'I aint trying to go to prison for robbing but I feel like there aint many other choices,'" was simply "venting" and did not actually communicate intent to commit the robbery the next day. Ely

also argued that trial counsel failed to present the full text message conversation with Sporven and that had it been presented, it would have established that the conversation was merely venting.

Ely never suggested at trial that the text messages sent from his cell phone the day before the robbery were not from him. Accordingly, he has not alleged sufficient factual allegations to amount to ineffective assistance concerning the investigation of Kaiser as a possible witness. Additionally, Ely cannot demonstrate prejudice in failing to have Sporven testify or introduce additional text messages, because, even if he was venting, it does not change the fact that he texted her about committing a robbery 1 day before he was involved in a deadly robbery.

### (v) Allegation Concerning
### Prosecutorial Misconduct

[11,12] Ely alleged that trial counsel failed to object to three incidents of prosecutorial misconduct during closing arguments. Determining whether defense counsel was ineffective in failing to object to prosecutorial misconduct requires an appellate court to first determine whether the petitioner has alleged any action or remarks that constituted prosecutorial misconduct.[17] A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct.[18] We therefore turn to the incidents that Ely has described as prosecutorial misconduct.

First, Ely argued that the State's comments that "if you believe that Emily [G.] and Drake Northrop [two testifying codefendants] were involved in this robbery and are guilty of a robbery, then you have to find . . . Ely guilty as well" and that "if based on the testimony you've heard today from Northrop and [Emily G.] and if you think, yeah, those two are in the

---

[17] *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011).

[18] *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016).

thick of it, those two are guilty, than so is [Ely]" were mislead-
ing and amounted to prosecutorial misconduct.

Second, Ely argued that the State's comments concerning
the text messages as evidence of Ely's intent were prejudi-
cial and amounted to prosecutorial misconduct, because the
text messages "had no relevance to this case." The prosecutor
stated at closing arguments, "You don't have to look into his
mind because he flat out tells you what his intent was from
text messages that he sent out." He continued and said, "At
8:00 p.m. he sends a text message to . . . Kaiser, asks about a
lick . . . because he needs some money. The idea about doing
a robbery is already in . . . Ely's mind before . . . they leave to
go to [the victim's] house."

Third, Ely argued that the State's comments concerning his
alleged flight and guilty conscience were prejudicial, unsup-
ported by the evidence, and thus amounted to prosecuto-
rial misconduct.

[13] The jury was instructed that the "attorneys may draw
legitimate deductions and inferences from the evidence." It
is clear that the prosecutor's comments did not amount to
prosecutorial misconduct, because the prosecutor was entitled
to draw inferences from the evidence in presenting his or her
case, and such inferences generally do not amount to prosecu-
torial misconduct.[19] The inferences were not unduly mislead-
ing, because the jury was properly instructed in the use of
these inferences. Because we find no prosecutorial misconduct,
Ely's trial counsel could not be ineffective in failing to object
to the State's closing argument.

### (vi) Allegation Concerning Jury
### Instruction No. 13 (Intent)

Ely alleged that trial counsel failed to object to or add to
the jury instruction concerning intent. The instruction given
read: "Intent is an element of the crimes charged against the

---

[19] See, *id.*; *State v. Dubray*, 289 Neb. 208, 854 N.W.2d 584 (2014).

defendant. In deciding whether the defendant acted with intent you should consider his words and acts and all the surrounding circumstances." Ely argued in his motion for postconviction relief that the instruction did not adequately define "intent," because it left out the following language found in other first degree murder trials:

"Intent is a material element of the crime charged against the Defendant. Intent is a mental process, and it therefore generally remains hidden within the mind where it is conceived. It is rarely —if ever— susceptible of proof by direct evidence. It may, however, be inferred from the words and acts of the Defendant and from the facts and circumstances surrounding his conduct. But before that intent can be inferred from such circumstantial evidence alone, it must be of such character as to exclude every reasonable conclusion except that the Defendant had the required intent. It is for you to determine from all the facts and circumstances in evidence whether or not Defendant committed the acts complained of and whether at such time he had the criminal intent. If you have any reasonable doubt with respect to either, you must find Defendant not guilty."

Ely argued that this language explained that the State must prove intent beyond a reasonable doubt and that without it, the jury was never informed that they must find the State proved intent beyond a reasonable doubt. This argument misstates the record, because, at the end of each instruction concerning the material elements of the crimes charged against Ely, the jury was instructed that "[t]he burden of proof is always on the State to prove beyond a reasonable doubt all of the material elements of the crime charged, and this burden never shifts." And intent is a material element in each charge. The jury was also given the definition of "reasonable doubt" in a separate instruction. Accordingly, the files and records affirmatively show that Ely is entitled to no relief on this claim.

(*vii*) *Allegation Concerning Jury Instruction*
*No. 20 (Accomplice Testimony)*

Ely alleged that trial counsel failed to object to the jury instruction concerning accomplice testimony for leaving out certain language. The instruction given at trial read: "There has been testimony from Emily [G.] and Drake Northrop, claimed accomplices of [Ely]. You should closely examine his or her testimony for any possible motive he or she might have to testify falsely." Ely argued that the instruction should have included language stating: "'You should hesitate to convict [Ely] if you decide that Emily [G.] or Drake Northrop testified falsely about an important matter and that there is no other evidence to support his/her testimony.'" He states this language is necessary "[w]hen [Ely] is being tried solely on the word of an accomplice . . . ."

[14,15] In construing an individual jury instruction, the instruction should not be judged in artificial isolation but must be viewed in the context of the overall charge to the jury considered as a whole.[20] Defense counsel is not ineffective for failing to object to jury instructions that, when read together and taken as a whole, correctly state the law and are not misleading.[21] Instruction No. 19 instructed the jury: "You are the sole judges of the credibility of the witnesses and the weight to be given to their testimony." The instruction listed a number of criteria the jury was to consider in determining the weight of testimony. These criteria included, among others: "Their interest in the result of the suit, if any"; "[t]he extent to which they are corroborated, if at all, by circumstances or the testimony of credible witnesses"; and "[a]ll other evidence, facts, and circumstances proved tending to corroborate or contradict such witnesses." In reviewing the jury instructions as a whole, it is clear that the instructions correctly stated the law, were not misleading, and addressed the same issues in Ely's proposed

---

[20] *State v. Sellers*, 279 Neb. 220, 777 N.W.2d 779 (2010).

[21] *State v. Iromuanya, supra* note 17.

instruction. Accordingly, the files and records affirmatively show that Ely is entitled to no relief on this claim.

### (viii) Allegation Concerning Jury
### Instruction No. 17 (Flight)

[16] Ely alleged that trial counsel failed to object to the jury instruction concerning the voluntary flight of a person for leaving out language that would pertain to him. This court has already upheld this specific jury instruction on direct appeal.[22] And, as a matter of law, counsel cannot be ineffective for failing to raise a meritless argument.[23] Therefore, the files and records affirmatively show that Ely is entitled to no relief on this claim.

### (ix) Allegations Concerning
### State's Witnesses

Ely alleged that trial counsel failed to depose three State witnesses that he had asked his counsel to depose. He argued that, had trial counsel deposed the witnesses, counsel "would have been able to prove [Ely's] mere acquiescence, instead of encouragement." However, Ely did not allege how the witnesses' testimony would have shown his "mere acquiescence" rather than encouragement. He also failed to demonstrate prejudice in light of the other evidence showing his involvement as beyond "mere acquiescence."

Ely additionally alleged that trial counsel failed to cross-examine witnesses efficiently. Specifically, he alleged trial counsel erred by (1) not questioning a State witness as to why a codefendant was texting from other people's cell phones and (2) not being able to provide a page number for the deposition of codefendant Drake Northrop when impeaching him for a prior inconsistent statement. He argued that no witnesses testified that he was the one who texted about a "lick" from his

---

[22] See *State v. Ely, supra* note 1.

[23] *State v. Erpelding*, 292 Neb. 351, 874 N.W.2d 265 (2015).

cell phone and that testimony of another codefendant texting from other people's cell phones would have made it so "the state could not have efficiently used the texts to prove [Ely's] intent." He also argued that counsel's being unprepared in impeaching Northrop caused the jury to believe he was a credible witness.

Ely has not alleged that anyone else ever used his cell phone besides him. Instead, he only makes vague suggestions that a jury could have concluded he was not the one who sent the incriminating texts from his cell phone. Furthermore, Ely did not demonstrate how he was prejudiced by trial counsel's not citing to an exact line and page number when attempting to impeach Northrop, despite trial counsel's alerting the jury to the prior inconsistent statement. As a result, Ely failed to allege sufficient facts and he is entitled to no relief on these claims.

### (x) Allegation Concerning
### Jacob Wilde's Testimony

Ely alleged trial counsel failed to object to Wilde's testimony after Wilde testified that he did not know of Ely's involvement in the crimes charged. He argued that he was prejudiced by Wilde's testimony which only "'speculates'" that he was involved in the robbery. Ely points to the following exchange during the cross-examination of Wilde to support his argument:

> [Defense counsel:] Was it your understanding [Ely] was not a participant in it — in the robbery?
>
> [State:] I'll object to that on foundation. He doesn't know what . . . Ely's involvement was, other than what . . . Ely told him.
>
> [Court:] I'm uncomfortable with him understanding, so sustained.

We note that on redirect, Wilde then testified to what Ely told him about the plan for the robbery. According to Wilde, Ely said he and the others "were supposed to go in, and the kid

wasn't supposed to put up a fight, and they were going to get the weed and leave."

Ely admits that "Wilde is allowed to testify to what he got out of the conversation between him and [Ely]." However, we find that Wilde testified to what Ely said was the plan for the robbery and not what "he got out of the conversation"; therefore, his testimony is admissible nonhearsay. As such, Ely's counsel had no grounds on which to object to Wilde's testimony and the files and records affirmatively show that Ely is entitled to no relief on this claim.

### (xi) Allegation Concerning Failure
### to Review Evidence

Ely alleged trial counsel failed to review all the evidence with him before trial. He asserted that counsel neither prepared a defense with him nor showed him all of the evidence that was used against him before trial. He argued that if counsel had, he would have accepted the State's initial plea bargain and pled guilty to second degree murder. Despite making this argument, Ely admitted that the State offered him a second plea bargain at trial after the evidence was introduced. And, the second plea bargain differed from the initial plea bargain in only one respect—it also required a plea of use of a deadly weapon. He voluntarily did not accept that plea bargain.

The record reflects that prior to trial, Ely attempted to dismiss his counsel and proceed pro se, because he had not seen his discovery in a year. Trial counsel responded that counsel had gone over all the discovery with Ely and had shared all the information disclosed by the State. Moreover, Ely's own postconviction motion includes a letter from his trial counsel in response to an apparent bar complaint filed by Ely against counsel. That letter states that trial counsel "spent an inordinate amount of time going through . . . Ely's entire discovery file with him on more than one occasion." The files and records affirmatively show that he is entitled to no relief on this claim.

### (xii) Allegation Concerning Failure to Explain
### Defense During Opening Statements
### and Closing Arguments

Ely alleged that trial counsel failed to adequately explain his defense during opening statements and closing arguments. Ely argued that trial counsel attempted to assert the defense that Ely only acquiesced to the robbery but failed to define acquiescence, because the jury had to ask for the definition during its deliberation. The record shows that the court gave a supplemental jury instruction defining acquiescence as "conduct recognizing the existence of a transaction, and intended, in some extent at least, to carry the transaction or permit it to be carried into effect." The record also reflects that the jury was instructed on "acquiescence" during the trial.

During opening statements, Ely's trial counsel clearly stated that "[m]ere presence and acquiescence at the time a crime occurs is not enough for a conviction of guilty." Counsel also asserted that Ely was not active in the robbery. Then, at closing argument, trial counsel stated that "mere presence, that mere acquiescence or silence does not meet the State's highest burden in this case. The State must prove intentional encouragement or intentional assistance." Trial counsel also asserted that Ely's "hanging out with these people, being around these people, being present and going along with what these people were planning to do is much different than intentionally participating or intentionally planning to participate in a robbery."

We find that trial counsel effectively explained Ely's defense. That the defense was unsuccessful does not amount to ineffective assistance. For these reasons, the files and records affirmatively show that Ely is entitled to no relief on this claim.

### (xiii) Allegation Concerning
### Conflict of Interest

[17] Ely alleged that trial counsel and he had a conflict of interest because he had attempted to dismiss his counsel on two

prior occasions. He argued that the conflict of interest was born out of his claiming trial counsel failed to do counsel's job, that counsel lied to him, and that the client-attorney trust had been broken. However, Ely failed to allege any actual conflict. The phrase "conflict of interest" denotes a situation in which regard for one duty tends to lead to disregard of another or where a lawyer's representation of one client is rendered less effective by reason of his or her representation of another client.[24] Ely did not allege, and the record does not reflect, that trial counsel had any divided loyalties or acted against Ely's interests. As such, Ely made insufficient factual allegations and is entitled to no relief on this claim.

### (b) Ineffective Assistance of Appellate Counsel

[18,19] A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review.[25] When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel actually prejudiced the defendant. That is, courts begin by assessing the strength of the claim appellate counsel failed to raise.[26]

### (i) Allegation Concerning Right to Proceed Pro Se

[20-22] Ely alleged that appellate counsel failed to argue that the district court erred when it denied his right to proceed pro se. He argued that his Sixth Amendment rights were violated "by being forced into trial with unwanted counsel." A criminal defendant has a constitutional right to waive the assistance of counsel and conduct his or her own defense under the

---

[24] *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013).

[25] *State v. Starks*, 294 Neb. 361, 883 N.W.2d 310 (2016).

[26] *Id.*

Sixth Amendment and Neb. Const. art. I, § 11.[27] In order to waive the constitutional right to counsel, the waiver must be made knowingly, voluntarily, and intelligently.[28] A waiver of counsel need not be prudent, just knowing and intelligent.[29]

The record shows that Ely moved to dismiss counsel on two separate occasions before trial and that both motions were denied. In denying his first motion to dismiss counsel and proceed pro se, the trial court observed: "I don't see — quite honestly, I don't see any benefit to you proceeding pro se between now and [the trial] without the advice of counsel. It is a serious — or these are serious charges. And I still think you need the advice of counsel."

Given the seriousness of the constitutional rights at issue, the denial is not subject to harmless error review.[30] We conclude that the failure to argue the denial is likewise not subject to harmless error review. And, the files and records do not affirmatively show Ely is entitled to no relief. Accordingly, as the State concedes, an evidentiary hearing is warranted on this claim.

### (ii) Allegations Concerning "Flight" Instruction

Ely alleged that appellate counsel was ineffective in arguing on appeal against the "flight" jury instruction in three ways. First, he alleged that appellate counsel argued a jury instruction that did not reflect the instruction given at trial. He argued that he was prejudiced when appellate counsel raised issues concerning the "flight" instruction that did not pertain to his case.

---

[27] See *State v. Hessler*, 282 Neb. 935, 807 N.W.2d 504 (2011).

[28] *State v. Delgado*, 269 Neb. 141, 690 N.W.2d 787 (2005).

[29] *State v. Figeroa*, 278 Neb. 98, 767 N.W.2d 775 (2009).

[30] See *McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984).

Second, he alleged that appellate counsel failed to argue that the "flight" instruction given at trial was prejudicial, because there must have been "unexplained" circumstances that evidenced his consciousness of guilt. He argued that his alleged flight was explained by evidence that he left Omaha to "catch up on old times" and not out of consciousness of guilt.

[23] Third, Ely alleged that appellate counsel failed to argue that the "flight" instruction amounted to a presumption and that the jury should have received an instruction on presumptions in criminal cases pursuant to Neb. Rev. Stat. § 27-303 (Reissue 2016). The instruction given at trial stated:

> You are instructed that the voluntary flight of a person immediately or soon after the occurrence of a crime is a circumstance . . . which the jury may consider in connection with all the other evidence in the case to aid you in determining the question of the guilt or innocence of such person.

We note that this instruction does not create a presumption—at most it created an inference. However, references to "presumptions" in § 27-303 necessarily include "inferences."[31]

In addressing the first two allegations, we note that Ely is correct that appellate counsel did argue against certain language in the "flight" instruction that was not included in the instruction at trial. However, after noting this mistake on direct appeal, we nonetheless reviewed the entire instruction and found no error.[32] On direct appeal, we also determined that the evidence given at trial necessitated the "flight" instruction, thereby inferring there were unexplained circumstances.[33] Therefore, Ely has failed to demonstrate prejudice on these first two claims.

---

[31] See *State v. Parks*, 245 Neb. 205, 511 N.W.2d 774 (1994).

[32] See *State v. Ely, supra* note 1.

[33] See *id.*

In addressing the third allegation, we find that to the extent that § 27-303 applies to the "flight" instruction, the failure to comply with the statute is harmless error. First, as a "circumstance for consideration," the instruction "simply inform[ed] the jury concerning correct use of circumstantial evidence."[34] Second, the court also instructed the jury that all material elements of the crimes charged were to be proved beyond a reasonable doubt and that Ely was presumed innocent until he has been proved guilty beyond a reasonable doubt. Thus, in reading the jury instructions as a whole, we find that they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence. The files and records affirmatively show that Ely is entitled to no relief on this claim.

### (iii) Allegation Concerning Violation of Confrontation Rights

Ely alleged that appellate counsel failed to argue that his confrontation rights were violated when the court prohibited cross-examination of Emily G. and Northrop concerning the possible life sentences they faced if they did not testify. At trial, Ely's counsel timely objected to this limitation on the scope of cross but the objection was overruled. Ely argued that, had such cross-examination been allowed, the jury "would have received a significantly different impression of the witness' credibility."

[24,25] We addressed a nearly identical assignment of error concerning the same restriction on cross-examining Emily and Northrop in a codefendant's direct appeal.[35] In that case, we held that the right to confrontation is not unlimited, and only guarantees an opportunity for effective cross-examination, not examination that is effective in whatever way and to whatever extent the defense may wish.[36] And, when the object of the

---

[34] See *State v. Jasper*, 237 Neb. 754, 763, 467 N.W.2d 855, 861 (1991).

[35] See *State v. Patton*, 287 Neb. 899, 845 N.W.2d 572 (2014).

[36] See *id.*

cross-examination is to collaterally ascertain the accuracy or credibility of the witness, the scope of the inquiry is ordinarily subject to the discretion of the trial court.[37]

Both Emily and Northrop testified that they were charged with first degree murder and that they hoped for leniency in exchange for testifying. Even without knowing the specific penalty for first degree murder, a reasonable juror would understand from this testimony that the testifying codefendants were hoping to obtain a substantial benefit from their cooperation with the prosecution. Therefore, there is no prejudice and the files and records affirmatively show that Ely is entitled to no relief on this claim.

### (iv) Allegation Concerning Failure to Argue Issue of Evidence Admitted Pursuant to § 27-404

Ely alleged that appellate counsel failed to argue that evidence was ruled admissible pursuant to § 27-404 in a codefendant's first trial but inadmissible in his trial. In our review of that codefendant's appeal, we note that the evidence was not admitted; rather, the defense had made an offer of proof and appealed the court's order.[38] We found no error in the court's ruling that evidence was inadmissible pursuant to § 27-404 in that case,[39] and, therefore, appellate counsel could not have been ineffective for failing to make such an argument in this case. The files and records affirmatively show that Ely is entitled to no relief on this claim.

### (v) Remaining Assignments of Ineffective Assistance of Appellate Counsel

Ely's remaining four assignments of ineffective assistance of appellate counsel essentially restate earlier arguments of ineffective assistance of trial counsel. We have already found

---

[37] *Id.*

[38] See *id.*

[39] See *id.*

that the files and records affirmatively show Ely is entitled to no relief on those claims. Because his trial counsel and appellate counsel are the same, we also conclude that he is entitled to no relief on these claims.

## 2. Motion to Proceed
### In Forma Pauperis

Ely assigns and argues that the district court erred when it denied his motion to proceed in forma pauperis. An application to proceed in forma pauperis shall be granted unless there is an objection that the party filing the application has sufficient funds to pay costs, fees, or security, or is asserting legal positions which are frivolous or malicious.[40] Here, there was no objection from the State but the court objected on its own motion. In so doing, the court was required to provide a written statement of its reasons, findings, and conclusions for denial of the application.[41] The court failed to do so, and we review the denial de novo on the record.

Ely filed an affidavit of poverty with his motion to proceed in forma pauperis, and the record does not show that he has any other funds to pay costs, fees, or security. If Ely's motion for postconviction relief had stated no claims requiring an evidentiary hearing, the court's denial of his motion to proceed informa pauperis would have been moot. But, as stated above, the record shows that two of Ely's claims warranted an evidentiary hearing and were therefore not frivolous or malicious. Because we have no written statement from the district court of any other reasons for denial of the application, we conclude that it was error to deny Ely's application.

## 3. Motion to Appoint Counsel

[26] Ely assigns and argues that the district court erred when it denied his motion for appointment of counsel. When the

---

[40] § 25-2301.02.

[41] See *id.*

defendant's petition presents a justiciable issue to the district court for postconviction determination, an indigent defendant is entitled to the appointment of counsel.[42] As we have noted, Ely has alleged two claims that warranted an evidentiary hearing. Therefore, he was entitled to the appointment of counsel and the district court's denial of his motion was an abuse of discretion.

### 4. MOTION TO RECUSE

Finally, Ely assigns and argues that the district court erred in denying his motion asking the court to recuse itself from the case. Ely argues that the district court judge "has been prejudiced against him since before trial, when the Court denied Ely's motion to dismiss counsel and to proceed Pro Se."[43] He additionally argues that the district court judge has become biased and prejudiced against him, because Ely has argued multiple claims of district court error in his motion for postconviction relief.

[27,28] A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law.[44] A trial judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice is shown.[45] Ely has not demonstrated, nor does the record show, actual bias or prejudice, or that a reasonable person would question the judge's impartiality. Therefore,

---

[42] *State v. Phelps*, 286 Neb. 89, 834 N.W.2d 786 (2013).

[43] Brief for appellant at 12.

[44] *Kalkowski v. Nebraska Nat. Trails Museum Found.*, 290 Neb. 798, 862 N.W.2d 294 (2015).

[45] *Blaser v. County of Madison*, 285 Neb. 290, 826 N.W.2d 554 (2013).

the district court did not abuse its discretion in denying Ely's motion to recuse.

## VI. CONCLUSION

For the reasons set forth above, we conclude that Ely was entitled to an evidentiary hearing on his claims that (1) his trial counsel was ineffective in failing to advise him of his right to testify and (2) his appellate counsel was ineffective in failing to argue that the district court erred in denying him the right to proceed pro se. We therefore reverse, and remand with directions that an evidentiary hearing be held on these two claims. We also direct the district court to grant Ely's motions to proceed in forma pauperis and for appointment of counsel. In all other respects, we affirm the district court's order.

Affirmed in part, and in part reversed
and remanded with directions.