Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/13/2017 08:12 AM CDT

State of Nebraska, appellee, v.
Erick F. Vela, appellant.
___ N.W.2d ___

Filed July 21, 2017.    No. S-16-465.

1. **Constitutional Law: Appeal and Error.** A constitutional issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal.
2. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.
3. **Postconviction: Constitutional Law: Judgments.** Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable.
4. **Postconviction: Constitutional Law: Proof.** In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.
5. **____: ____: ____.** A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.
6. **Postconviction: Proof.** If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.
7. **Postconviction: Effectiveness of Counsel: Appeal and Error.** When a defendant was represented both at trial and on direct appeal by the same

counsel, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief.

8. **Constitutional Law: Effectiveness of Counsel.** A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.

9. **Effectiveness of Counsel: Proof: Words and Phrases: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

10. **Postconviction: Effectiveness of Counsel: Appeal and Error.** A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review.

11. **Effectiveness of Counsel: Appeal and Error.** When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel actually prejudiced the defendant. That is, courts begin by assessing the strength of the claim appellate counsel failed to raise.

12. ____: ____. Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal.

13. **Trial: Juries.** The retention or rejection of a venireperson as a juror is a matter of discretion with the trial court.

14. **Juries: Discrimination: Appeal and Error.** An appellate court reviews de novo the facial validity of an attorney's race-neutral explanation for using a peremptory challenge as a question of law.

15. **Juries: Discrimination: Prosecuting Attorneys: Appeal and Error.** An appellate court reviews for clear error a trial court's factual determination regarding whether a prosecutor's race-neutral explanation is persuasive and whether the prosecutor's use of a peremptory challenge was purposefully discriminatory.

Appeal from the District Court for Madison County: James G. Kube, Judge. Affirmed.

Patrick P. Carney, of Carney Law, P.C., for appellant.

Douglas J. Peterson, Attorney General, and James D. Smith for appellee.

Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ., and Inbody, Judge.

Miller-Lerman, J.

## NATURE OF CASE

Erick F. Vela appeals the order of the district court for Madison County which overruled his motion for postconviction relief without an evidentiary hearing. He claims the district court erred when it rejected six of his claims of ineffective assistance of counsel. He also asks this court to consider an additional claim that was not presented to or passed upon by the district court. We affirm the district court's order.

## STATEMENT OF FACTS

On June 12, 2003, Vela pled guilty to the murders of Lisa Bryant, Lola Elwood, Jo Mausbach, Evonne Tuttle, and Samuel Sun. The five victims had been killed during an attempted bank robbery carried out by Vela and two other men, Jorge Galindo and Jose Sandoval, in Norfolk, Nebraska, on September 26, 2002. Vela pled guilty to five counts of first degree murder and five counts of use of a deadly weapon to commit a felony. He also pled guilty to counts of burglary, robbery, and use of a deadly weapon to commit a felony related to the forcible entry into a home and the theft of a vehicle, which occurred after the men left the bank.

The State sought the death penalty, and an aggravation hearing was held in which a jury found the existence of five statutory aggravating circumstances for each of the five murders. After a sentencing hearing, a three-judge panel imposed the death penalty for each of the five murders. We affirmed Vela's sentences on direct appeal. *State v. Vela*, 279 Neb. 94, 777 N.W.2d 266 (2010).

On January 7, 2014, Vela filed an amended motion for postconviction relief in the district court. Because Vela was represented by the same counsel at trial and on direct appeal, this postconviction proceeding was his first opportunity to assert that he received ineffective assistance of counsel. Vela's motion raised numerous claims of ineffective assistance of trial and appellate counsel. The district court overruled Vela's motion for postconviction relief without an evidentiary hearing.

Vela appealed the denial to this court in case No. S-14-557. In a memorandum opinion, we concluded that the district court had used an incorrect standard to determine whether an evidentiary hearing was required on Vela's postconviction claims. *State v. Vela*, 290 Neb. xvii (No. S-14-557, May 8, 2015). We therefore vacated the order and remanded the cause to the district court for reconsideration of Vela's motion using the correct standard.

On remand, the district court filed an order on April 12, 2016, in which it recited a standard consistent with the standard set forth in our memorandum opinion. The district court then considered and rejected each of Vela's claims for postconviction relief and concluded that no evidentiary hearing was required on any of the claims. The court therefore overruled Vela's motion for postconviction relief and his request for an evidentiary hearing.

Vela appeals the district court's order overruling his motion for postconviction relief without an evidentiary hearing. In this current appeal, Vela assigns error to the district court's rejection of six of his claims. Further details regarding those six claims, the facts related thereto, and the district court's analysis of those claims are set forth in our analysis below.

## ASSIGNMENTS OF ERROR

Vela claims that the district court erred when it denied postconviction relief without an evidentiary hearing on the following claims of ineffective assistance of trial and appellate

counsel: (1) Counsel deterred Vela from entering a guilty plea early in the case; (2) counsel failed to timely discover and adequately challenge the existence of a personal relationship between a prosecutor and the presiding juror; (3) counsel failed to assign error on direct appeal to the trial court's overruling of Vela's challenges based on *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986); (4) counsel failed to allow the State's expert to conduct testing on Vela to determine his level of intellectual ability; (5) counsel failed to request that a definition of malice be included in the jury instruction setting forth aggravating circumstances; and (6) counsel failed to offer evidence to negate a finding of malice.

[1] In addition, Vela asks this court to consider a claim that, he asserts, presents clear error. Vela claims that he received ineffective assistance of counsel because counsel failed, both at trial and on direct appeal, to challenge the constitutionality of Nebraska's capital sentencing statutory scheme on the basis that it allows a panel of judges, rather than a jury, to determine mitigating circumstances and to weigh aggravating circumstances against mitigating circumstances. Vela's arguments in this regard are based in large part on the opinion of the U.S. Supreme Court in *Hurst v. Florida*, ___ U.S. ___, 136 S. Ct. 616, 193 L. Ed. 2d 504 (2016), which was filed January 12, 2016. Vela acknowledges that this claim was not raised in his motion for postconviction relief and was not considered by the district court. A constitutional issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal. *State v. Boche*, 294 Neb. 912, 885 N.W.2d 523 (2016). We therefore do not consider this claim in this appeal.

## STANDARD OF REVIEW

[2] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files

affirmatively show that the defendant is entitled to no relief. *State v. Watson*, 295 Neb. 802, 891 N.W.2d 322 (2017).

## ANALYSIS

Vela claims, generally, that the district court erred when it denied his postconviction motion without an evidentiary hearing and, specifically, when it rejected six of his claims. Therefore, before reviewing the merits of Vela's specific claims, we review general standards relating to postconviction relief.

[3-6] Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *State v. Watson, supra*. Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *Id*. A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution. *Id*. If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing. *Id*.

[7] Vela's postconviction claims center on the alleged ineffective assistance provided by his trial counsel, who was also his counsel on direct appeal. When a defendant was represented both at trial and on direct appeal by the same counsel, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief. *State v. Ely*, 295 Neb. 607, 889 N.W.2d 377 (2017).

[8,9] A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair

trial. *State v. Watson, supra*. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *Id*. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *Id*. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id*.

[10-12] Vela claims that in certain respects counsel was ineffective on direct appeal as well as at trial. A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review. *State v. Ely, supra*. When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel actually prejudiced the defendant. *Id*. That is, courts begin by assessing the strength of the claim appellate counsel failed to raise. *Id*. Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *State v. Starks*, 294 Neb. 361, 883 N.W.2d 310 (2016).

With these standards in mind, we review Vela's specific claims.

*First Claim: Timing of Plea.*

In his amended motion for postconviction relief, Vela claimed that his counsel's performance was deficient because counsel failed to advise him to plead guilty to all counts at an earlier stage of the proceedings against him. The information against Vela was filed on October 31, 2002, and he

pled guilty on June 12, 2003. Vela asserted that he missed out on various strategic advantages because he did not plead guilty sooner.

First, Vela stated that on November 22, 2002, the Governor signed 2002 Neb. Laws, L.B. 1, which was enacted in response to the U.S. Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002). Vela argued that if he had pled guilty prior to the effective date of L.B. 1, he would not have been subject to the death penalty, because Nebraska had no effective death penalty at that time.

Second, Vela noted that even after the enactment of L.B. 1, which required, inter alia, that the prosecutor allege aggravating circumstances in the information charging first degree murder, the prosecutor in this case did not actually amend the information to allege aggravating circumstances until January 29, 2003. Vela argued that if he had pled guilty prior to the amendment, the death penalty would not have been available, because the information in effect at that time did not allege aggravating circumstances.

Finally, Vela noted that on March 17, 2003, the body of Travis Lundell was found; Lundell was the victim of a separate homicide in which Vela was involved. Vela contends that the discovery of Lundell's body and Vela's implication in the homicide disadvantaged him in two ways in regard to capital sentencing. First, evidence of the Lundell homicide supported the finding of the aggravating circumstance set forth in Neb. Rev. Stat. § 29-2523(1)(a) (Reissue 2008), that he had "a substantial prior history of serious assaultive or terrorizing criminal activity," upon which aggravating circumstance finding the three-judge panel placed substantial importance when it sentenced him to death. Second, the three-judge panel discounted the importance of Vela's guilty plea as a mitigating circumstance, because the panel determined that one reason Vela entered his plea was because a codefendant had cooperated with authorities in connection with the Lundell

homicide. Vela argued that if he had pled guilty before Lundell's body was found, evidence of the other homicide could not have been used either to support an aggravating circumstance or to diminish the mitigating effect of his guilty plea.

Vela summarized this claim by arguing that if counsel had advised or allowed him to plead guilty at an earlier stage of the proceedings, the above-enumerated events, which occurred prior to the entry of his plea, would not have disadvantaged him with respect to the imposition of the death penalty.

The district court rejected each aspect of Vela's claim that counsel was ineffective with regard to the timing of his plea. With regard to the enactment of L.B. 1, the court noted that in Vela's direct appeal, we had rejected a similar argument and stated that "the death penalty did not disappear from Nebraska law during the approximately 5-month period between the decision in *Ring* and the enactment of L.B. 1." *State v. Vela*, 279 Neb. 94, 109-10, 777 N.W.2d 266, 282 (2010). With regard to the allegation of aggravating circumstances in the information, the district court noted that we addressed the issue in the direct appeal of one of Vela's codefendants, determining that the notice of aggravation was a procedural rule that did not apply to pending litigation and that therefore, no error stemmed from the fact the original information filed by the State did not contain a notice of aggravation. See *State v. Galindo*, 278 Neb. 599, 774 N.W.2d 190 (2009).

With regard to the discovery of Lundell's body, the court noted that it was mere speculation that Vela's counsel knew about Vela's involvement in the Lundell homicide prior to the discovery of the body. The court further noted that the jury found five aggravating circumstances in connection with each of the homicides in this case; the court determined that the four other aggravating circumstances were sufficient to support imposition of the death penalty and that it would be mere speculation to say that the death penalty would not have been imposed if not for the aggravating circumstance supported by evidence of the Lundell homicide.

With regard to the importance of his plea as a mitigating circumstance, the court similarly determined that it was mere speculation as to whether counsel knew a codefendant would cooperate with authorities in connection with the Lundell homicide. The court also noted that there were other factors that diminished the value of Vela's plea as a mitigating circumstance.

We agree with the district court's reasoning. With regard to Vela's first two arguments, our holdings in *State v. Vela, supra*, and *State v. Galindo, supra*, undermine Vela's allegation that he would not have been subject to the death penalty if counsel had advised him to enter a plea at an earlier date. In *Vela*, we rejected Vela's argument that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), effectively invalidated Nebraska's death penalty scheme and that Nebraska had no effective death penalty until L.B. 1 was enacted. We stated instead that "[b]efore, during, and after that period, Nebraska statutes provided that the maximum penalty for first degree murder was death." *State v. Vela*, 279 Neb. at 110, 777 N.W.2d at 282. In *Galindo*, we rejected the defendant's arguments that L.B. 1 required that the original information contain a notice of aggravation and that because the original information filed against him did not contain a notice of aggravation, he could not be sentenced to death. We noted that at the time the original information was filed against the defendant in *Galindo*, the statutory scheme did not require such notice and that the information was amended after the enactment of L.B. 1. We concluded that the notice of aggravation was a new procedural rule that had no retroactive effect on steps taken in an action before the statute took effect, and we therefore found "no error stemming from the fact that the original information did not contain a notice of aggravation." *State v. Galindo*, 278 Neb. at 628, 774 N.W.2d at 219. Based on these holdings in *Vela* and *Galindo*, we determine that Vela failed to demonstrate any prejudice resulting from counsel's failure to urge him to enter a plea

prior to the enactment of L.B. 1 or the filing of the amended information against him.

With regard to the discovery of Lundell's body, we have reviewed the record and note that the sentencing panel relied on Vela's killing of Lundell to establish the aggravating circumstance that he had "a substantial prior history of serious assaultive or terrorizing criminal activity" under § 29-2523(1)(a) and that the sentencing panel stated that such aggravating circumstance "should be given the greatest weight, and it is of such a magnitude, that it alone is dispositive and outweighs all of the non-statutory mitigating circumstances." The sentencing panel also referred to certain facts related to the Lundell killing as reasons it did not find remorse to be a mitigating factor.

The record indicates that the Lundell killing played an important role in the panel's decision to impose the death penalty, and therefore, it is possible that the discovery of Lundell's body prejudiced Vela in this action. However, Vela cannot show that his trial counsel's performance was deficient for failing to advise him to enter a plea before Lundell's body was discovered. As the district court noted, Vela's claim required speculation that counsel knew of Vela's involvement in Lundell's killing before the body was discovered. A conclusion that counsel's performance was deficient would also require counsel to somehow know that Lundell's body would be discovered and when it would be discovered and to control the progress of the case to the extent that Vela would be convicted and sentenced before the body was discovered. Given the speculative nature of Vela's claim and the hypothetical circumstances just recited, we could not say that counsel's performance was deficient based on a failure to convince Vela to enter a plea before the body was discovered.

We find no merit to this claim, and we therefore conclude that the district court did not err when it rejected this claim without an evidentiary hearing.

*Second Claim: Relationship of
Prosecutor and Juror.*

In his amended motion for postconviction relief, Vela claimed that his counsel's performance was deficient because counsel failed to timely discover and to adequately challenge the existence of a personal relationship between a prosecutor and the presiding juror in the aggravation phase of the trial. Vela alleged that during jury voir dire, his counsel failed to ask R.S., a member of the venire who would eventually become the presiding juror, whether he knew any of the lawyers in the case, and that it was not until R.S. submitted a question to the court during jury deliberations that the prosecutor told Vela's defense counsel that R.S. was the prosecutor's pastor. Vela alleged that his counsel failed to move for a mistrial or for a new trial on the basis of the relationship between the prosecutor and the presiding juror and on the basis of the prosecutor's failure to timely disclose the relationship during jury selection. Vela further alleged that his counsel also failed to raise the issue on direct appeal. Vela argued that these failures of counsel prejudiced him, because if counsel had properly raised a challenge, the trial court would have declared a mistrial or granted a new trial or this court would have reversed his death sentences on appeal.

In its order denying postconviction relief, the district court noted that during the jury voir dire, R.S. responded to the court's questions by indicating that he could take an oath to sit as a fair and impartial juror and that he was not aware of any bias or prejudice for or against either side. The district court noted that R.S. had similarly responded to a question by the prosecutor by indicating that he could listen to the evidence and the law given by the judge. The court further noted that Vela's defense counsel had asked R.S., "'because of the relationship you have with the community as a minister, whether or not you would feel uncomfortable facing your congregation or other members of the community if you were the one person who said, no, the State didn't meet [its] burden'" and whether

R.S. "'would vote your conscious [sic] regardless of what the rest of the pack had in mind.'" R.S. responded to defense counsel's questions by indicating that he would not feel uncomfortable in that situation and that he would do what he felt was warranted. The postconviction court further noted that Vela did not allege that defense counsel would have struck the potential juror if counsel had known of the relationship nor did Vela allege the extent of the pastoral relationship between the juror and the prosecutor. The district court concluded that Vela was not entitled to postconviction relief on this claim.

[13] We agree that Vela's allegations do not show prejudice as a result of counsel's failure to challenge or strike the juror. The retention or rejection of a venireperson as a juror is a matter of discretion with the trial court, see *State v. Banks*, 278 Neb. 342, 771 N.W.2d 75 (2009), and Vela alleges nothing more than the conclusion that R.S.' pastoral relationship to the prosecutor indicates that R.S. could not have been fair and impartial. Given R.S.' statements during voir dire that he could be fair and impartial, that he was not aware of any bias or prejudice on his own part, and that his role as a minister in the community would not affect his decisions as a juror, the court would not have abused its discretion if it had rejected a challenge made against R.S. Furthermore, it is mere speculation whether counsel would have used a peremptory strike on R.S. rather than on other potential jurors if counsel had known of the relationship, and it is further speculation whether a different juror would have changed the result of the trial. Vela has not shown prejudice with respect to this claim.

We find no merit to this claim, and we therefore conclude that the district court did not err when it rejected this claim without an evidentiary hearing.

*Third Claim: Appeal of*
Batson *Rulings.*

In his amended motion for postconviction relief, Vela claimed that his counsel's performance was deficient because

counsel failed to assign error on direct appeal to the trial
court's overruling of Vela's *Batson* challenges. Vela alleged
that during peremptory strikes, the prosecutor struck the only
Hispanic juror and the only African-American juror on the
venire. Vela objected to the strikes on the basis of *Batson
v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69
(1986) (holding that prosecutor's privilege to strike individual
jurors through peremptory challenges is subject to commands
of Equal Protection Clause). Vela alleged that the prosecutor
gave reasons for both strikes and that the trial court overruled
defense counsel's objections. Vela claimed that he was preju-
diced when counsel failed to challenge these rulings on direct
appeal because this court "would have reversed Vela's death
sentences and remanded the case to the district court for a new
aggravation trial."

In its order denying postconviction relief, the district court
noted that after Vela had challenged the strikes and pointed out
that the potential jurors were, respectively, the only Hispanic
and the only African-American on the venire, the burden
shifted to the State to articulate race-neutral bases for striking
the jurors. The court determined that the reasons given by the
prosecutor, which the record shows generally went to personal-
ity traits and prior prosecutions of both potential jurors, met
this burden and that defense counsel had "'no argument'"
in response. The postconviction court determined that "[i]n
the face of the race-neutral reason provided by the Madison
County Attorney," it was not deficient performance for appel-
late counsel to not raise the issue on direct appeal and that
there was not a substantial probability that the appellate court
would have found error in the rulings. The district court con-
cluded that Vela was not entitled to postconviction relief on
this claim.

[14,15] An appellate court reviews de novo the facial valid-
ity of an attorney's race-neutral explanation for using a peremp-
tory challenge as a question of law. *State v. Oliveira-Coutinho*,
291 Neb. 294, 865 N.W.2d 740 (2015). An appellate court

reviews for clear error a trial court's factual determination regarding whether a prosecutor's race-neutral explanation is persuasive and whether the prosecutor's use of a peremptory challenge was purposefully discriminatory. *Id*. Given these standards of review, the prosecutor's race-neutral explanations, and the trial court's reasons for rejecting Vela's *Batson* challenges, we conclude that there was not a reasonable probability that inclusion of this issue in Vela's direct appeal would have changed the result of the appeal. Therefore, counsel's failure to raise the issue on appeal was not ineffective assistance. See *State v. Starks*, 294 Neb. 361, 883 N.W.2d 310 (2016).

We find no merit to this claim, and we therefore conclude that the district court did not err when it rejected this claim without an evidentiary hearing.

*Fourth Claim: Intellectual Functioning.*

In his amended motion for postconviction relief, Vela generally claimed that his counsel's performance was deficient because counsel failed to adequately present a case to show that Vela was "mentally retarded," which would have precluded imposition of the death penalty. Among the specific failures of which Vela complained, Vela alleged that his counsel failed to allow the State's expert to conduct testing on Vela to fully determine his level of intellectual ability.

Vela alleged that after testing showed that his IQ was 75, which the trial court found established "the first statutory element of mental retardation," the State retained Dr. Leland Zlomke to further evaluate Vela. Vela alleged that Zlomke wanted to administer adaptive behavior testing but that Vela's counsel did not allow Zlomke to administer the test. Vela alleged that although the trial court found the first prong of the test for "mental retardation" was presented based on Vela's IQ of 75, the court was not warranted in finding that the second prong, "limitations in adaptive functioning," was not shown. Vela alleged that if his counsel had allowed Zlomke to administer adaptive behavior testing, the results would have shown

that he had significant limitations in adaptive functioning in at least two of the relevant skill areas and that the court would have found that the second prong of the test for "mental retardation" had been established.

In its order denying postconviction relief, the district court rejected Vela's claims regarding counsel's failure to utilize experts to adequately establish his diminished mental capacity. The district court reviewed the testing done by several experts, including those retained at Vela's request and those retained at the State's request. The district court specifically rejected Vela's allegation that his counsel had refused to allow Zlomke to perform adaptive behavior testing on Vela. The court cited to our opinion in Vela's direct appeal and stated that the "record reflects that Zlomke had the opinion that Vela's overall adaptive behavior was appropriate for his age." The court concluded that this claim did not entitle Vela to postconviction relief.

In one of the portions of our opinion in Vela's direct appeal that was cited by the district court, we stated:

> Utilizing two third-party informants who were acquainted with Vela for 2 to 3 months prior to his arrest, Zlomke administered a standardized test known as Scales of Independent Behavior-Revised to assess Vela's adaptive behavior. As a result of this testing, Zlomke concluded that while Vela had limitations in certain adaptive skill areas, his overall adaptive behavior was appropriate for his age.

*State v. Vela*, 279 Neb. 94, 137, 777 N.W.2d 266, 299 (2010). In another cited portion, we stated, "The district court's finding that Vela failed to prove significant deficits in adaptive behavior is supported by substantial evidence. . . . Zlomke administered a modified adaptive behavior test based on interviews with Vela's acquaintances and concluded that Vela fell within the average range of adaptive functioning." *Id*. at 151-52, 777 N.W.2d at 308. These portions of our opinion in Vela's direct appeal show that even if Vela's allegation that his

counsel prevented Zlomke from performing adaptive testing on Vela is true, such action by counsel did not prejudice Vela, because Zlomke was able to use alternative means to evaluate Vela's adaptive behavior and Zlomke concluded that Vela's overall adaptive behavior was appropriate.

We note for completeness that during the pendency of this appeal, the U.S. Supreme Court decided *Moore v. Texas*, ___ U.S. ___, 137 S. Ct. 1039, 197 L. Ed. 2d 416 (2017), in which it concluded that a state court had relied on superseded medical standards when it evaluated the defendant's adaptive functioning as a factor in determining whether the defendant's IQ of 74 warranted a finding that he was intellectually disabled. In the present case, Vela challenged the effectiveness of counsel based on his allegation that counsel completely prevented an evaluation of his adaptive functioning. Vela did not challenge the appropriateness of specific standards or methods that were used to evaluate his adaptive functioning, and therefore, consideration of that question is not before us in this appeal.

We find no merit to this claim, and we therefore conclude that the district court did not err when it rejected this claim without an evidentiary hearing.

*Fifth and Sixth Claims: Definition
of Malice and Evidence
to Negate Malice.*

In his amended motion for postconviction relief, Vela claimed that his counsel's performance was deficient because counsel failed to request a jury instruction defining "malice" in connection with the aggravating circumstance of Lundell's murder which served as evidence under § 29-2523(1)(a) which generally concerns a defendant's prior assaultive behavior and terrorizing criminal activity. He also claimed that counsel's performance was deficient because counsel failed to present evidence to negate a finding of malice with regard to such aggravating circumstance.

More particularly, Vela claimed that in support of the aggravating circumstance set forth in § 29-2523(1)(a), the State alleged that Vela had a history of serious assaultive or terrorizing criminal activity and that it presented evidence of the Lundell homicide to support that allegation. Vela claimed that there was evidence available to defense counsel which would show that Vela did not kill Lundell with malice and that instead he was threatened and coerced by a codefendant. He also alleged that evidence of his diminished intellectual functioning would negate any finding of malice in connection with the killing of Lundell.

The district court concluded that Vela was not entitled to postconviction relief on either the claim related to a malice instruction or the claim related to evidence to negate a finding of malice. The district court stated that the aggravating circumstance set forth in § 29-2523(1)(a) "involves a review of [a] defendant's past criminal and assaultive terrorizing history" but that "[i]t does not involve a review of whether or not a defendant had the mental capacity to commit other crimes or engage in assaultive or terrorizing activity in the past."

The court also noted that in Vela's direct appeal, he had claimed that the failure to instruct the jury on the definition of malice in connection with the aggravating circumstance was plain error. We rejected this claim in the direct appeal and stated that "contrary to Vela's argument, we find no evidence in the record suggesting the absence of malice in the form of legal justification or excuse for the Lundell killing." *State v. Vela*, 279 Neb. 94, 117, 777 N.W.2d 266, 287 (2010). We further stated in our opinion in his direct appeal that Vela was not on trial for the murder of Lundell and instead that "Vela's involvement in the Lundell murder was simply the evidence by which the State sought to prove aggravating circumstance § 29-2323(1)(a), a 'substantial prior history of serious or assaultive terrorizing criminal activity' prior to the five murders for which he had been convicted." 279 Neb. at 118, 777 N.W.2d at 287.

As the district court in this postconviction action reasoned, even if the jury in this case had found that Vela did not kill Lundell with malice, there was still evidence that Vela had killed Lundell and was guilty of some lesser form of homicide. Regardless of the degree of homicide, such evidence supported a finding of the existence of the aggravating circumstance in § 29-2523(1)(a) of "a substantial prior history of serious or assaultive terrorizing criminal activity." Also, there was no reason to think the sentencing panel would have given less weight to the aggravating circumstance of Lundell's murder or would have decided against the death penalty if the Lundell killing were found to be a lesser homicide. Therefore, Vela's allegations do not show how he was prejudiced by counsel's alleged failures to request an instruction on malice and to present evidence to negate a finding of malice in connection with Lundell's murder which served as an aggravating circumstance.

We find no merit to these claims, and we therefore conclude that the district court did not err when it rejected these claims without an evidentiary hearing.

## CONCLUSION

For the reasons set forth above, we determine that with respect to each of Vela's claims, the district court did not err when it concluded that Vela failed to allege sufficient facts to demonstrate a violation of his constitutional rights and that the record and files affirmatively show that he is entitled to no relief. We conclude that the district court did not err when it overruled Vela's motion for postconviction relief without an evidentiary hearing. Accordingly, we affirm the order of the district court.

AFFIRMED.

HEAVICAN, C.J., not participating.