Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/16/2018 08:13 AM CDT

State of Nebraska, appellee, v.
Craig A. Johnson, appellant.
___ N.W.2d ___

Filed December 22, 2017.    No. S-17-069.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.
2. **Effectiveness of Counsel: Appeal and Error.** When a claim of ineffective assistance of counsel presents a mixed question of law and fact, an appellate court reviews the lower court's factual findings for clear error but independently determines whether those facts show counsel's performance was deficient and prejudiced the defendant.
3. **Postconviction: Constitutional Law: Proof.** A defendant seeking relief under the Nebraska Postconviction Act must show that his or her conviction was obtained in violation of his or her constitutional rights.
4. **Postconviction: Constitutional Law: Judgments: Proof.** An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution, causing the judgment against the defendant to be void or voidable.
5. **Postconviction: Effectiveness of Counsel: Proof: Appeal and Error.** When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court must determine whether the petitioner has alleged facts that would support a claim of ineffective assistance of counsel and, if so, whether the files and records affirmatively show that he or she is entitled to no relief.
6. **Postconviction: Effectiveness of Counsel: Proof.** If the petitioner has not alleged facts which would support a claim of ineffective assistance of counsel or if the files and records affirmatively show he or she is entitled to no relief, then no evidentiary hearing is necessary.

7. **Constitutional Law: Effectiveness of Counsel.** A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.

8. **Effectiveness of Counsel: Proof: Words and Phrases: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

9. **Trial: Effectiveness of Counsel: Prosecuting Attorneys: Appeal and Error.** In determining whether defense counsel was ineffective in failing to object to prosecutorial misconduct, an appellate court must first determine whether the petitioner has alleged any action or remarks that constituted prosecutorial misconduct.

10. **Trial: Prosecuting Attorneys: Juries.** A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct.

11. **Criminal Law: Directed Verdict.** In a criminal case, the court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged or (2) evidence is so doubtful in character and lacking in probative value that a finding of guilt based on such evidence cannot be sustained.

12. **Criminal Law: Directed Verdict: Appeal and Error.** In an appellate court's consideration of a criminal defendant's motion for a directed verdict, the State is entitled to have all its relevant evidence accepted as true, every controverted fact resolved in its favor, and every beneficial inference reasonably deducible from the evidence.

13. **Directed Verdict.** If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed.

14. **Trial: Prosecuting Attorneys.** In assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper. It is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial.

15. **Trial: Prosecuting Attorneys: Evidence.** A prosecutor must base his or her argument on the evidence introduced at trial rather than on matters not in evidence.

16. **Trial: Prosecuting Attorneys.** A prosecutor is entitled to draw inferences from the evidence in presenting his or her case, and such inferences generally do not amount to prosecutorial misconduct.

17. **Trial: Constitutional Law: Testimony.** A defendant has a fundamental constitutional right to testify.

18. **Trial: Attorney and Client: Testimony: Waiver.** The right to testify is personal to the defendant and cannot be waived by defense counsel's acting alone.

19. ____: ____: ____: ____. A trial court does not have a duty to advise the defendant of his or her right to testify or to ensure that the defendant waived this right on the record. Instead, defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make.

20. **Trial: Attorney and Client: Effectiveness of Counsel: Testimony: Waiver.** Defense counsel's advice to waive the right to testify can present a valid claim of ineffective assistance in two instances: (1) if the defendant shows that counsel interfered with his or her freedom to decide to testify or (2) if counsel's tactical advice to waive the right was unreasonable.

21. **Postconviction: Constitutional Law: Proof.** In a postconviction proceeding, an evidentiary hearing is not required (1) when the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief.

22. **Effectiveness of Counsel: Appeal and Error.** When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant.

23. ____: ____. Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal.

24. **Constitutional Law: Speedy Trial.** Determining whether a defendant's constitutional right to a speedy trial has been violated requires a balancing test in which the courts must approach each case on an ad hoc basis. This balancing test involves four factors: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant.

25. **Postconviction: Appeal and Error.** A party cannot raise an issue in a postconviction motion if he or she could have raised that same issue on direct appeal.

Appeal from the District Court for Cheyenne County: Derek C. Weimer, Judge. Affirmed.

Craig A. Johnson, pro se.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Funke, J.

This is Craig A. Johnson's appeal from the district court's order denying him postconviction relief without an evidentiary hearing. We affirm.

## I. BACKGROUND

In the spring of 2011, Johnson began dating April Smith. During their relationship, Johnson exhibited signs of jealousy about April's relationship with her former husband Edward Smith. In November, Johnson told a coworker that he would kill April if she ever left him, and on December 10, he told his supervisor that if he ever caught April and Edward together, he would "beat the shit out of both of them."

Later that same day, April's nephew, Robert Gray, his wife, and their children visited April and Johnson at her duplex. Gray testified that Johnson was drinking beer that night and was unusually quiet. Both Gray and his wife testified that Johnson was upset that Edward had repaired April's van and that other men had been flirting with April. Gray's wife also testified that Johnson's demeanor was angry, that the interactions between Johnson and April were tense, and that they had begun to argue before the Grays left that evening. April's neighbors reported hearing loud voices and arguing in the early morning hours of December 11, 2011. One of the

neighbors stated that she heard "a couple of thuds" as well. On December 12, April did not report to work and did not respond to Gray's attempts to contact her. Two law enforcement officers went to April's duplex and found April dead. April's body was lying face down in the living room, and her feet and hands were bound. They observed ligature abrasions on her neck, a wound on her hand and face, and a gaping wound on her abdomen. The pathologist who performed April's autopsy concluded that pinpoint hemorrhages found on April's mouth could have been caused by strangulation or suffocation. The ligature abrasion on her neck indicated strangulation. A forensic scientist found a fingerprint on a trash bag that matched one of Johnson's fingerprints. DNA testing on blood found on the trash bag produced DNA profiles that matched April's profile. An investigator testified that an imprint left on the trash bag appeared to be of a human face. Investigators also found two knives in the sink, one of which had an 8-inch blade with blood on it that matched April's DNA. The duplex showed signs of a struggle, and blood was splattered throughout. The pathologist opined that her death was a homicide caused by the stab wound to her abdomen and suffocation, with a contributing cause of multiple drug toxicity.

On December 15, 2011, Johnson was arrested in Michigan while driving April's van. When Nebraska investigators searched the van, they found Johnson's T-shirt and athletic shoes with dark stains that they believed to be blood. The stains on both the T-shirt and the shoes tested positive for blood, and the DNA profile extracted from these stains matched April's profile.

After a jury trial in which Johnson did not testify, he was convicted of first degree murder, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a prohibited person. The court sentenced him to prison terms of, respectively, life, 40 to 50 years, and 10 to 20 years, with all terms to be served consecutively.

On direct appeal, Johnson claimed that the court erred by admitting cumulative, gruesome autopsy photographs that depicted the same injuries, thus allowing the prosecutor to inflame the jurors' passions. We rejected this claim, because Johnson did not assign and argue it.[1] We also rejected his claim that the court erred by denying his *Batson* challenge based on an irrational and pretextual justification.[2] In doing so, we held that the record supported the prosecutor's concerns about the juror's knowledge of the case. Lastly, we determined that the court did err by admitting testimony and exhibits that Johnson's DNA profile contained certain alleles that matched alleles found in a mixed blood sample, because such evidence lacked sufficient probative value. However, we concluded that the error was harmless beyond a reasonable doubt.

In Johnson's verified motion for postconviction relief, he alleged multiple instances of ineffective assistance of counsel. Because Johnson was represented by the same lawyers at the time of his trial and on direct appeal, this postconviction proceeding was his first opportunity to assert claims of ineffective assistance of counsel. Johnson alleged that his trial counsel was ineffective in failing to file a motion for absolute discharge on the basis of speedy trial, failing to object to the prosecutor's comments in voir dire, failing to properly examine various witnesses at trial, failing to argue after moving for a directed verdict, failing to object to the state's closing argument, failing to sever count III from the other charges, and failing to allow Johnson to testify at trial.

The district court, without holding an evidentiary hearing, denied Johnson's motion, finding that Johnson had failed to allege sufficient facts to demonstrate a violation of his constitutional rights and that the record and files affirmatively showed that he was entitled to no relief. Johnson timely appealed.

---

[1] See *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 757 (2015).

[2] See *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

## II. ASSIGNMENTS OF ERROR

Johnson assigns, restated, that the district court erred in overruling his motion for postconviction relief by (1) denying his claim of ineffective assistance of counsel during voir dire, (2) denying his claim of ineffective assistance of counsel on the motion for directed verdict, (3) denying his claim of ineffective assistance of counsel during closing arguments, (4) denying his claim of ineffective assistance of counsel concerning his constitutional right to testify, (5) denying his claim of ineffective assistance of counsel on direct appeal, and (6) denying his claim of a violation of his constitutional right to a speedy trial.

## III. STANDARD OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[3]

[2] Likewise, when a claim of ineffective assistance of counsel presents a mixed question of law and fact, we review the lower court's factual findings for clear error but independently determine whether those facts show counsel's performance was deficient and prejudiced the defendant.[4]

## IV. ANALYSIS

In its ruling on Johnson's motion for postconviction relief, the district court determined that its records and files, as well as the bill of exceptions and transcript prepared for Johnson's direct appeal, provided a sufficient record to consider each of Johnson's claims. In doing so, the court ruled that he was not entitled to relief on his motion and was not entitled to an evidentiary hearing.

---

[3] *State v. Vela*, 297 Neb. 227, 900 N.W.2d 8 (2017).

[4] See *State v. Dubray*, 289 Neb. 208, 854 N.W.2d 584 (2014).

[3-6] A defendant seeking relief under the Nebraska Postconviction Act[5] must show that his or her conviction was obtained in violation of his or her constitutional rights.[6] An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution, causing the judgment against the defendant to be void or voidable.[7] When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court must determine whether the petitioner has alleged facts that would support a claim of ineffective assistance of counsel and, if so, whether the files and records affirmatively show that he or she is entitled to no relief.[8] If the petitioner has not alleged facts which would support a claim of ineffective assistance of counsel or if the files and records affirmatively show he or she is entitled to no relief, then no evidentiary hearing is necessary.[9]

## 1. INEFFECTIVE ASSISTANCE OF COUNSEL

[7,8] A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.[10] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[11] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the

---

[5] Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2016).

[6] *State v. Robertson*, 294 Neb. 29, 881 N.W.2d 864 (2016).

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Vela, supra* note 3.

[11] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

defendant's defense.[12] To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.[13] A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.[14]

### (a) Voir Dire

Concerning the statements made by the prosecutor during voir dire, the court determined that the statements complained of by Johnson were not objectionable, and therefore, counsel was not ineffective for failing to object, and that Johnson failed to show how he was prejudiced by counsel's performance. Those statements include the prosecutor's telling the prospective jurors that there would be no evidence of a shooting or "gun play," that the matter was not a death penalty case, that the evidence and testimony was "not pretty," and that Johnson had "an obligation to put [the State's] evidence to the test."

[9,10] In determining whether defense counsel was ineffective in failing to object to prosecutorial misconduct, an appellate court must first determine whether the petitioner has alleged any action or remarks that constituted prosecutorial misconduct.[15] A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct.[16]

The first statement raised by Johnson—that there would be no evidence of a shooting or "gun play"—was not improper.

---

[12] *Vela, supra* note 3.

[13] *Id.*

[14] *Id.*

[15] See *State v. Ely*, 295 Neb. 607, 889 N.W.2d 377 (2017).

[16] *Id.*

The evidence clearly showed that a gun was not found during the investigation, and there was no evidence that April was shot. The prosecutor brought up this issue during voir dire to address what he believed were inaccurate media reports about the case and to explain why the jurors must set aside anything that they may have heard about the case or what they may have seen about the case outside of the courtroom.

It was not improper for the prosecutor to inform the jurors of their obligations so long as it was consistent with the law. Later, at the end of the trial, the court also instructed the jury that certain things were not evidence from which it could find the facts, including "[a]nything you may have seen or heard about this case outside the courtroom." As a result, the prosecutor's comment about "gun play" was not improper.

The second statement raised by Johnson—that the State was not seeking the death penalty—was an important detail to share with the prospective jurors. If the State had been seeking the death penalty, the jury would have been tasked with determining whether alleged aggravating circumstances existed. As a result, it was proper to inform the jury of what their responsibilities entailed. So to address the fact that the State was not seeking the death penalty was not improper.

The third statement raised by Johnson—that the evidence and testimony was "not pretty"—was not improper. The crime scene and autopsy photographs depicted the violent end to April's life, and the testimony of the pathologist detailed the injuries April sustained. This type of evidence would be disturbing to most jurors, and it was important for both the State and Johnson to know whether prospective jurors would be able to cope with seeing such evidence and maintain their impartiality. As a result, to phrase it as "not pretty" was not improper.

In regard to the last statement raised by Johnson, that the defendant had an obligation to put the State's evidence to the test, Johnson has taken this comment out of context. The entirety of the prosecutor's statement was as follows:

The judge has a role to administer sentence. He has a role to rule on objections. He has a role to conduct the court accordingly and as the judge told you we are optimistic that we can try this case as quickly as possible. And I read about 21 names of potential witnesses, we have a [b]unch of exhibits, a [b]unch of photographs, a lot of videos, some physical evidence to put before you and then there are 21 witnesses and we are going to try to speed through them as quickly as possible but we also have an obligation, we have an obligation to meet our burden of proof and the defendant has an obligation to put our evidence to the test and that sometimes is not an exact science. There is no normal in a murder case or any jury trial. Most of the state's witnesses in this case are coming from long distances away, some from Michigan, some from Iowa, there are a few local but most of them are from Scotts Bluff or f[a]rther. There could be traffic problems, there could be days [we] would run out of witnesses because we went to[o] fast and we ended [at] 3:00, there may be days that we go a bit later maybe an hour later because we have to fit the witness [in], I think it is all of our goals to have this case to you no later than Monday, perhaps Tuesday of next week. Is it possible that you go Wednesday, maybe and maybe deliberations go on into Wednesday, could be longer could be much shorter. Is there anybody aside from those th[at] indicated earlier to the judge that is going to be so distracted about the [length] that this trial, the fact that their kids are not getting picked up or having to rearrange plans that they are not going to be able to focus on the evidence and just think about rushing justice?

The prosecutor made the statement while explaining the number of witnesses intended to call and the amount of evidence he intended to present. The prosecutor was determining whether any of the prospective jurors would have difficulty with the length of the trial. The comment was not repeated

in the prosecutor's comments regarding the State's burden to prove Johnson guilty beyond a reasonable doubt. The comment was also not included in the prosecutor's comments about Johnson's presumption of innocence.

Though we do not condone the use of the term "obligation," the same did not impose upon Johnson a compulsion to put the State's evidence to the test. Further, the trial court instructed the jury at the end of the trial that "[i]n criminal prosecutions, the burden of proof never shifts from the State to the Defendant." A phrase used no less than five times throughout the instructions. In addition, the jury was instructed that "[s]tatements, arguments, and questions of the attorneys representing both the State and [Johnson]" were not evidence. As a result, given the specific and limited context in which the phrase "obligation to put [the State's] evidence to the test" was used, it was not improper.

### (b) Motion for Directed Verdict

In regard to the claim that upon moving for a directed verdict, counsel failed to argue in support of the motion, the district court noted that sufficient evidence had been offered to support the charges and that therefore, argument would have been fruitless. As a result, the district court found that Johnson was not prejudiced by counsel's failure to make such an argument.

[11-13] In a criminal case, the court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged or (2) evidence is so doubtful in character and lacking in probative value that a finding of guilt based on such evidence cannot be sustained.[17] In our consideration of a criminal defendant's motion for a directed verdict, the State is entitled to have all its relevant evidence accepted as true, every controverted fact resolved in its favor, and every beneficial inference reasonably deducible

---

[17] *State v. Betancourt-Garcia*, 295 Neb. 170, 887 N.W.2d 296 (2016).

from the evidence.[18] If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed.[19]

Johnson alleges that since his DNA and fingerprints were not found on the knife recovered in April's home, the court should have granted a directed verdict on counts II and III. However, sufficient evidence was introduced to support the jury's finding that Johnson committed the murder, including witnesses who had heard Johnson state that he would harm April if she ever left him, witnesses who saw Johnson and April arguing on the evening before the murder, a witness who heard thuds from April's home on the night she was killed, the pathologist's testimony that indicated the cause of April's death was a stab wound or suffocation, April's DNA that was found on the knife, Johnson's fingerprints that were found on a trash bag used to suffocate or strangle April, Johnson who was found driving April's van in Michigan after the murder, and Johnson who had April's blood on his clothing and his shoes after the murder. Therefore, the court did not err in overruling the motion for directed verdict and any argument in support of the motion would have been without value. As a result, Johnson's trial counsel could not be ineffective in failing to argue in support of the motion for directed verdict.

Because we find that none of the prosecutor's statements were improper, trial counsel's performance was not deficient when he failed to object to those statements. In addition, even if the prosecutor's comments constituted misconduct, Johnson is unable to demonstrate a reasonable probability that but for his counsel's deficient performance, the result of the proceeding would have been different, based upon the overwhelming evidence of guilt.

---

[18] *State v. Morley*, 239 Neb. 141, 474 N.W.2d 660 (1991), *reversed on other grounds sub nom. Morley v. Stenberg*, 828 F. Supp. 1413 (1993).

[19] See *State v. Rothenberger*, 294 Neb. 810, 885 N.W.2d 23 (2016).

### (c) Closing Argument

In regard to counsel's failure to object to the State's closing argument, Johnson contends that the argument was highly prejudicial to him and inflamed the jury. The district court ruled that counsel was not ineffective, because the State's closing argument was proper and was supported by the evidence.

The prosecutor's comment specifically complained of by Johnson is as follows:

> There is a tactic at play here, it's not a surprise, let's blame [April], let's blame the police. Why do we do that to get the focus off of [Johnson]. To get the focus off of what did he do and the evidence against him. The other thing — the other tactic at work here is look at this piece of evidence, [defense counsel] got up here and he told you, you know, look at that — look at those few spots on the wall. One has April's one has [Johnson's], doesn't mean nothing. Really does that mean proof beyond a reasonable doubt? Again, that is the temptation I asked you not to fall into, to look at a piece of information in isolation, to look at a piece of evidence in isolation and again, you know, blame the police, blame [April], get the focus off of [Johnson]. We want you to forget that his fingerprint is on this trash bag. We want you to forget that underneath the bag that is associated with him and the killing of April [are] these hats. Were the hats involved, I don't know. They are in the trashcan and if there is a connection between those hats we know that one piece of evidence is certainly tied to . . . Johnson.

[14] In assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper. It is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial.[20]

---

[20] *State v. Nolan*, 292 Neb. 118, 870 N.W.2d 806 (2015).

[15,16] A prosecutor must base his or her argument on the evidence introduced at trial rather than on matters not in evidence.[21] However, a prosecutor is entitled to draw inferences from the evidence in presenting his or her case, and such inferences generally do not amount to prosecutorial misconduct.[22]

In *State v. Dubray*,[23] we stated:

[W]hen a prosecutor's comments rest on reasonably drawn inferences from the evidence, he or she is permitted to present a spirited summation that a defense theory is illogical or unsupported by the evidence and to highlight the relative believability of witnesses for the State and the defense. These types of comments are a major purpose of summation, and they are distinguishable from attacking a defense counsel's personal character or stating a personal opinion about the character of a defendant or witness.

Here, the record includes evidence of blood splatters on a wall which matched both April's and Johnson's blood; evidence of Johnson's fingerprint on the trash bag; and evidence of two hats found in the garbage bag. As a result, the prosecutor correctly stated the facts. In addition, the jury was properly instructed that the "attorneys may draw legitimate deductions and inferences from the evidence." The prosecutor's comments did not amount to prosecutorial misconduct, because the inferences were based upon the evidence introduced at trial and because the jury was properly instructed in the use of these inferences.

Further, the prosecutor's comments were not an attack on the defense counsel's character, but merely an argument that defense counsel was attempting to divert the juror's attention from the relevant evidence. As a result, there was no prosecutorial misconduct, and therefore, Johnson's trial counsel

---

[21] *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016).

[22] See *Nolan, supra* note 20. See, also, *Dubray, supra* note 4.

[23] *Dubray, supra* note 4, 289 Neb. at 227, 854 N.W.2d at 604-05.

could not be ineffective in failing to object to the State's clos-
ing argument.

### (d) Failure to Testify

Concerning Johnson's right to testify, the district court ruled
that Johnson merely provided generalizations and factual con-
clusions that he would have testified that he did not commit
the murder and that he would have provided a reason why he
was found in Michigan. As a result, the court found no demon-
stration of prejudice.

[17-19] A defendant has a fundamental constitutional right
to testify.[24] The right to testify is personal to the defendant and
cannot be waived by defense counsel's acting alone.[25] But a
trial court does not have a duty to advise the defendant of his
or her right to testify or to ensure that the defendant waived
this right on the record. Instead, "'defense counsel bears the
primary responsibility for advising a defendant of his or her
right to testify or not to testify, of the strategic implications of
each choice, and that the choice is ultimately for the defendant
to make.'"[26]

[20] Defense counsel's advice to waive the right to tes-
tify can present a valid claim of ineffective assistance in two
instances: (1) if the defendant shows that counsel interfered
with his or her freedom to decide to testify or (2) if counsel's
tactical advice to waive the right was unreasonable.[27]

[21] However, if a postconviction motion alleges only con-
clusions of fact or law, or if the records and files in the case
affirmatively show that the defendant is entitled to no relief,
the court is not required to grant an evidentiary hearing.[28] Thus,
in a postconviction proceeding, an evidentiary hearing is not

---

[24] *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011).

[25] *Id.*

[26] *Id.* at 810-11, 806 N.W.2d at 421.

[27] *Iromuanya, supra* note 24.

[28] See *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015).

required (1) when the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) when the motion alleges only conclusions of fact or law; or (3) when the records and files affirmatively show that the defendant is entitled to no relief.[29]

In assessing postconviction claims of ineffective assistance of counsel for failure to call a particular witness, we have upheld the dismissal without an evidentiary hearing where the motion did not include specific allegations regarding the testimony which the witness would have given if called.[30]

Johnson's motion merely alleges that if he were allowed to testify, he "would have refuted the allegations against him" and he "wanted to explain to the jury why he traveled to Michigan." These reasons are mere conclusions of fact and are not sufficiently detailed to constitute factual allegations which, if proved, constitute an infringement of the movant's constitutional rights. Further, Johnson's allegations are insufficient to show a reasonable probability that the outcome would have been different but for the failure to call him as a witness.

### (e) Autopsy Photographs

Johnson alleges that trial counsel was ineffective on direct appeal for assigning as an error the admission of cumulative, gruesome autopsy photographs that depicted the same injuries, but arguing that the district court erred in admitting crime scene photographs, not autopsy photographs.

On direct appeal, we held that Johnson had not assigned that the court erred in admitting cumulative crime scene photographs, and he had not argued his assignment that the court erred in admitting gruesome autopsy photographs. So we did not address whether the court erred in admitting any photographs.

---

[29] *Id.*

[30] *Dubray, supra* note 4.

Johnson contends generally that the autopsy photographs admitted during the direct examination of the pathologist who performed the autopsy were cumulative and gruesome and, as a result, were more prejudicial than probative.

[22,23] When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant.[31] That is, courts begin by assessing the strength of the claim appellate counsel failed to raise.[32] Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal.[33]

We have reviewed the autopsy photographs admitted into evidence and conclude that they were necessary to understand the pathologist's medical testimony regarding the severity of April's injuries and to establish the cause and manner of April's death. April suffered multiple stabs wounds and had numerous abrasions and ligature marks. The cause of her death included both a stab wound and/or strangulation or suffocation. As such, the records and files in this case show that Johnson was not entitled to relief on the ground that defense counsel failed to object to the admission of the photographs during the trial. Therefore, defense counsel was not ineffective for failing to preserve the issue on direct appeal.

## 2. Constitutional Right
### to Speedy Trial

In regard to Johnson's claim that his constitutional right to a speedy trial was violated, the court ruled that because he failed to raise it on direct appeal, it was procedurally barred.

---

[31] *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015).

[32] *Id.*

[33] *Id.*

[24] Under U.S. Const. amend. VI and Neb. Const. art. I, § 11, a defendant has the right to a speedy trial. Determining whether a defendant's constitutional right to a speedy trial has been violated requires a balancing test in which the courts must approach each case on an ad hoc basis.[34] This balancing test involves four factors: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant.[35]

[25] However, a party cannot raise an issue in a postconviction motion if he or she could have raised that same issue on direct appeal.[36] Whether Johnson's constitutional right to a speedy trial was violated could have been raised in his direct appeal and was not. As a result, the claim is procedurally barred.

## V. CONCLUSION

For the reasons set forth above, we conclude that Johnson was not entitled to an evidentiary hearing on his claims of ineffective assistance of counsel. We therefore affirm the district court's order.

Affirmed.

Wright, J., not participating in the decision.

---

[34] *Betancourt-Garcia, supra* note 17.

[35] *Id.*

[36] See *State v. Jackson*, 275 Neb. 434, 747 N.W.2d 418 (2008).