IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. DERREZA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JORGE PEREZ DERREZA, APPELLANT.

Filed June 23, 2020.    No. A-19-613.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Timothy S. Noerrlinger, of Naylor & Rappl Law Office, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

PIRTLE, BISHOP, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Jorge Perez Derreza appeals the order of the Lancaster County District Court denying his motion for postconviction relief without an evidentiary hearing. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

Derreza was convicted by a jury of possession with the intent to deliver methamphetamine of 140 grams or more, a Class IB felony, and was sentenced to 20 to 20 years' imprisonment. See *State v. Derreza*, No. A-16-527, 2017 WL 3485394 (Neb. App. Aug. 15, 2017) (selected for posting to court website). On direct appeal, Derreza claimed that the district court erroneously admitted hearsay evidence at trial, improperly instructed the jury, and inappropriately discharged a jury member. *Id*. He also claimed that the evidence was insufficient to support his conviction and that his conviction should be reversed as a consequence of cumulative error. *Id*. This court

- 1 -

affirmed Derreza's conviction and sentence. *Id.* The Nebraska Supreme Court denied Derreza's petition for further review.

In November 2018, Derreza filed a verified motion for postconviction relief alleging various allegations of ineffective assistance of counsel against his original and replacement trial counsel, which replacement counsel then served as his appellate counsel on direct appeal. Derreza's allegations of ineffective assistance of replacement counsel can be divided into four broad categories: (1) ineffective assistance during pretrial investigation and trial preparation, (2) ineffective assistance during pretrial motions, (3) ineffective assistance during trial, and (4) ineffective assistance during direct appeal. Additionally, in his conclusion, Derreza states that he "was prejudiced by the deficient performance of counsel because, there exists a reasonable probability that, but for defendant's counsels' aforementioned breaches of due diligence and ineffective assistance, the result of defendant's hearing would have been different."

### 1. INEFFECTIVE ASSISTANCE DURING PRETRIAL INVESTIGATION AND TRIAL PREPARATION

As to the first broad category, ineffective assistance of counsel during pretrial investigation and trial preparation, Derreza's allegations can be broken down into two categories: (a) ineffectiveness in failing to test the reliability of the drug detection dog (Ike), who was brought to the scene of the vehicle stop which stop eventually resulted in Derreza's arrest, and (b) ineffectiveness in failing to explore issues associated with the rental of an Impala in which the drugs were eventually found. Derreza made allegations regarding his original trial counsel, his replacement trial counsel, and made certain allegations without specifying whether he was referring to his original or replacement trial counsel.

### (a) Reliability Regarding Drug Detection Dog

The first series of allegations concern the reliability of the drug detection dog, Ike. Regarding his original trial counsel, Derreza alleged that at the hearing on his motion to suppress, original counsel "did not ask Sgt. Hicks [the drug detection dog's handler] any questions of substance regarding Ike's [the drug detection dog's] sniff in [Derreza]'s case, nor any questions regarding Ike's performance on September 5, 2014." As to his replacement trial counsel, Derreza alleged (i) that he raised concerns to his trial counsel regarding the exterior sniff of the Impala, advised counsel that he was willing to pay for an expert to evaluate Sgt. Hicks and Ike's performance, and "specifically questioned his trial counsel regarding Ike wandering toward a ditch away from the Impala prior to being called back to the Impala by Sgt. Hicks," and that he further contends counsel failed to investigate this request or to seek expert guidance regarding Sgt. Hicks' and Ike's health and performance during the September 5, 2014, exterior sniff and failed to "determine if [Ike's] untimely death could have affected the exterior sniff of [Derreza]'s rented Impala on September 5, 2014"; (ii) that his counsel failed to depose Sgt. Hicks, who had regular contact with Ike, to determine if Hicks noted any change in Ike's demeanor or performance over the last 3 months of Ike's life, claiming that Sgt. Hicks "would likely have given cause for a motion to suppress regarding the reliability of the probable cause provided by Ike when he conducted an exterior sniff of [Derreza]'s rented Impala on September 5, 2014"; and (iii) that on November 25, 2015, replacement counsel filed a motion for exculpatory evidence regarding Ike which "does not

appear to have been ruled upon by [the district] court," and counsel failed to request veterinary records regarding Ike's functioning and failed to determine if there had been an examination of Ike which may have revealed Ike's ability to perform drug detection or otherwise "called into question the probable cause provided for the search of [Derreza]'s rented . . . Impala on September 5, 2014."

### (b) Statements Concerning Rental Car

The second series of pretrial ineffective assistance of counsel allegations concern alleged discovery inadequacies directed at both original and replacement counsel relating to the rental car.

Regarding his replacement trial counsel only, Derreza claims that replacement trial counsel failed to properly investigate his disclosure to counsel that Ronnie Menter, the driver of the Impala on the day of the arrest, attempted to rent the Impala himself while in California, but was unable to successfully rent the Impala due to Menter's driving and credit history; and that Derreza agreed to rent the Impala for Menter who then left California alone with the Impala. Derreza claims that counsel's failure to properly investigate this claim caused counsel to be unprepared for Menter and Blake Thomas' trial testimony and resulted in counsel's failure to adequately elicit testimony from Menter and Thomas which was consistent with facts related by Derreza to trial counsel that Derreza never had access to the Impala once Menter left the rental agency with the Impala.

Regarding both original trial counsel and replacement trial counsel, Derreza claims that he disclosed to both counsel the existence of recording equipment in the main lobby of the California rental car company branch where the Impala was rented; that there existed a digital record of the original rental of the Impala; and that he requested trial counsel to attempt to obtain any digital information to corroborate that Menter initially attempted to rent the Impala. Derreza alleged that "[n]either trial counsel conducted any type of investigation to determine if video or any other documentation could be obtained to corroborate these statements nor was such evidence presented by trial counsel during Menter's testimony during Derreza's trial in this matter."

### 2. INEFFECTIVE ASSISTANCE DURING PRETRIAL MOTIONS

As to the second broad category of ineffective assistance of counsel during pretrial motions, Derreza alleged that he advised trial counsel that "he initially felt compelled to answer [law enforcement's] questions" and his will was overborne when answering "the Trooper's questions in violation of *Jackson v. Denno* and trial counsel neglected to properly file a motion and to present evidence to exclude said statement at [Derreza]'s trial." Derreza did not specify whether he was referring to his original trial counsel or replacement trial counsel as to this allegation.

### 3. INEFFECTIVE ASSISTANCE DURING TRIAL

As to the third broad category of ineffective assistance of counsel during trial, Derreza alleged that trial counsel failed to (a) object to the evidence offered at trial, thereby not preserving objections raised in connection with his motion to suppress; (b) timely object at trial to preserve error associated with the court's overruling of Derreza's discovery request governing the drug detection dog's training and veterinary records preventing review of this discovery ruling; (c) object on confrontation grounds to Trooper Pelster's and Trooper Grummert's trial testimony

regarding statements made by Menter and Thomas about their route of travel, thereby denying Derreza of any meaningful appellate review of the admissibility of Menter's or Thomas' statements pursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); (d) "locate and interview key witnesses, [which resulted in] trial counsel [being] unable to secure the testimony of any witnesses at trial who could have stated that [Derreza] only rented the Impala after . . . Menter was unable to secure the rental on his own, which would have further corroborated the testimony of Menter and Thomas at trial"; (e) make a proper closing argument by failing to properly summarize the facts in a manner consistent with Derreza's innocence, neglecting to argue legitimate deductions to the jury, failing to advance reasonable inferences from the evidence, failing to advance a consistent theme in support of Derreza's innocence, failing to succinctly restate in a chronological format all of the inconsistencies in Trooper Pelster's trial testimony, and failing to properly highlight Menter's and Thomas' trial testimony; and (f) file a motion for a new trial, investigate any evidence to support the motion for a new trial, and have a hearing on the motion for new trial.

#### 4. INEFFECTIVE ASSISTANCE DURING DIRECT APPEAL

As to the fourth broad category of ineffective assistance of counsel during direct appeal, Derreza alleged that appellate counsel was ineffective for failing to adequately present the issue of improper jury instructions to the appellate court by neglecting to request that the trial court forward a complete transcript to the appellate court which "deprived the appellate court [of] the ability to review the claims made by appellate counsel regarding the improper jury instructions in the defendant's brief."

The district court denied Derreza's verified motion for postconviction relief without an evidentiary hearing because (1) Derreza's claims against his original trial counsel were either procedurally barred since they could have been raised on direct appeal, or that (2) his claims against replacement trial counsel, who also served as appellate counsel on direct appeal, were either insufficiently pled or affirmatively refuted by the record. Derreza has timely appealed to this court.

### III. ASSIGNMENT OF ERROR

Derreza contends that the district court erred in denying him an evidentiary hearing on the issues raised in his motion for postconviction relief.

### IV. STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Assad*, 304 Neb. 979, 938 N.W.2d 297 (2020).

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which is reviewed independently of the lower court's ruling. *State v. Mata*, 304 Neb. 326, 934 N.W.2d 475 (2019).

## V. ANALYSIS

Derreza contends that the district court erred in denying him an evidentiary hearing on the issues raised in his motion for postconviction relief. As we previously noted, Derreza's allegations of ineffective assistance of counsel were made against both his original trial counsel and his replacement counsel. As to his replacement counsel, those allegations can be effectively divided into four broad categories: (1) ineffective assistance during pretrial investigation and trial preparation; (2) ineffective assistance during pretrial motions; (3) ineffective assistance during trial; and (4) ineffective assistance related to his direct appeal.

Before turning to Derreza's specific claims on appeal, we review the general principles governing postconviction actions asserting claims of ineffective assistance of counsel. In *State v. Henderson*, 301 Neb. 633, 637-38, 920 N.W.2d 246, 255-56 (2018), the Nebraska Supreme Court stated:

Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018)[, *disapproved on other grounds, State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018)]. On appeal from the denial of postconviction relief without an evidentiary hearing, the question is not whether the movant was entitled to relief by having made the requisite showing. Instead, it must be determined whether the allegations were sufficient to grant an evidentiary hearing. *Id.*

The allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *Id.* In a proceeding under the Nebraska Postconviction Act, the application is required to allege facts which, if proved, constitute a violation or infringement of constitutional rights, and the pleading of mere conclusions of fact or of law is not sufficient to require the court to grant an evidentiary hearing. *Id.* An evidentiary hearing must be granted when the facts alleged, if proved, would justify relief, or when a factual dispute arises as to whether a constitutional right is being denied. *Id.*

. . . To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018). A court may address the two prongs of this test, deficient performance and prejudice, in either order. *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017).

In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Haynes, supra.* In determining whether trial counsel's performance was deficient, courts give counsel's acts a strong presumption of reasonableness. *State v. Alfredson*, 287 Neb. 477, 842 N.W.2d 815 (2014). An appellate court will not judge an ineffectiveness of counsel claim in hindsight. *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011). We must assess trial counsel's performance from

counsel's perspective when counsel provided the assistance. *Id.* When reviewing claims of ineffective assistance, we will not second-guess trial counsel's reasonable strategic decisions. *Id.*

Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *State v. Haynes, supra.* To establish the prejudice prong of a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. See *State v. Schwaderer, supra.* A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *State v. Custer*, 298 Neb. 279, 903 N.W.2d 911 (2017).

We next note that as to any claim involving Derreza's original trial counsel, a motion for postconviction relief asserting ineffective assistance of trial counsel is procedurally barred when (1) the defendant was represented by a different attorney on direct appeal than at trial, (2) an ineffective assistance of trial counsel claim was not brought on direct appeal, and (3) the alleged deficiencies in trial counsel's performance were known to the defendant or apparent from the record. *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018).

Here, Derreza was represented by his replacement counsel on direct appeal. He therefore cannot raise on postconviction any claims of ineffective assistance of his original trial counsel that were not preserved on direct appeal. Since no claims of ineffective assistance of counsel were raised on direct appeal, any ineffective assistance of counsel claims regarding Derreza's original trial counsel were not preserved and are procedurally barred. We now address each of the categories of Derreza's allegations of ineffective assistance of his replacement trial counsel in turn.

### 1. PRETRIAL INVESTIGATION AND TRIAL PREPARATION

Derreza first contends that his replacement trial counsel provided ineffective assistance of counsel during pretrial investigation and trial preparation. When, as here, a defendant was represented both at trial and on direct appeal by the same counsel, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief. *State v. Henderson*, 301 Neb. 633, 920 N.W.2d 246 (2018); *State v. Ely,* 295 Neb. 607, 889 N.W.2d 377 (2017). In his motion for postconviction relief, Derreza alleged that his replacement trial counsel was ineffective during pretrial investigation and trial preparation for (a) inadequacies in connection with pretrial handling of issues governing the reliability of the drug detection dog, and (b) inadequacies in connection with his disclosures to counsel governing his rental of the Impala. We discuss those independently.

### (a) Issues Regarding Drug Detection Dog

Regarding Derreza's ineffective assistance of his replacement counsel claims related to the drug detection dog, Derreza alleged that (i) replacement counsel was ineffective for failing to hire an expert or veterinary expert regarding the drug detection dog's performance, (ii) replacement counsel was ineffective for failing to depose Sergeant Hicks regarding any change in the drug detection dog's demeanor or performance from July to October 2014, and (iii) replacement counsel

was ineffective in failing to require a ruling on his motion for exculpatory evidence and failing to subpoena veterinary records.

### (i) Failure to Seek Expert Advice Regarding Drug Detection Dog

Derreza's first allegation regarding replacement counsel's ineffectiveness in connection with the reliability of the drug detection dog involves counsel's failure to investigate or hire an expert regarding the drug detection dog's performance and failure to hire a veterinary expert regarding the drug detection dog's health. Derreza argues that "[b]y failing to locate and interview key witnesses, trial counsel neglected to secure vast amounts of testimony at trial from a number of witnesses who could have properly advanced [Derreza]'s theory of the case and significantly undermined the veracity of the [S]tate's allegations against [him]." Brief for appellant at 19-20.

The district court held that Derreza's motion did not allege sufficient facts that, if proved, would entitle him to relief. Specifically, the court held that while Derreza claimed an expert should have been retained, he failed to articulate who would serve in that role, or what testimony the expert would provide which would otherwise impact his case. We agree. Derreza does not identify the expert or experts his replacement counsel should have investigated or hired, he fails to identify the "vast amount of testimony" that the experts would testify to, and he fails to identify how the expert testimony would have affected the outcome in his case. In short, because Derreza failed to allege sufficient facts that identify the specific nature of his counsel's ineffective assistance, and how that ineffectiveness prejudiced him, the district court did not err in denying him a hearing on these claims for postconviction relief.

### (ii) Failure to Depose Sergeant Hicks

Derreza next argues his replacement trial counsel failed by not deposing Sergeant Hicks, the drug detection dog's handler, regarding any change in the dog's demeanor or performance from July 2014 until the dog's death in October 2014. As to this claim, the district court again found that the claim failed for its lack of specificity and we agree. In connection with this claim, Derreza failed to articulate how deposing Sergeant Hicks about the health of the drug detection dog that successfully sniffed out drugs at the original scene would have impacted the outcome of this case. This argument fails.

### (iii) Failure to Require Ruling on Motion for Exculpatory Evidence/Failure to Subpoena Veterinary Records

Derreza's third allegation provided that his replacement counsel failed to require a ruling from the district court on his November 25, 2015, motion for exculpatory evidence regarding the drug detection dog and that replacement counsel failed to request veterinary records regarding the drug detection dog's functioning. The district court found that Derreza was not entitled to an evidentiary hearing on this allegation because the record affirmatively refutes the claim, and we agree. The record indicates the district court sustained Derreza's November 25, 2015, motion to compel discovery and to provide exculpatory evidence including veterinary records of the drug detection dog on the same day it was filed and ordered the State to disclose the requested discovery within 14 days. Since the record affirmatively refutes Derreza's claim, this allegation fails.

### (b) Derreza's Statements Regarding Rental Car

Derreza next asserts his replacement counsel was ineffective for failing to properly investigate Derreza's statement to him that Derreza rented the car for Menter who was unable to rent the car on his own and that Derreza had no access to the car, in which drugs were found, once Menter left the rental agency. Derreza further claims that replacement counsel failed to investigate to "determine if video or any other documentation could be obtained" from the rental agency to support Derreza's statement.

The district court held that, at trial, both Menter and Thomas testified that Derreza rented the car for Menter, and that Derreza failed to plead how providing additional evidence of that fact in any way impacts Derreza's conviction. We agree. The record established that Derreza rented that car for Menter and Derreza was pulled over in another vehicle which was accompanying, or following, Menter in the Impala. There is nothing in Derreza's motion which explains how additional evidence of these established facts would somehow impact the outcome of his case. This argument fails.

### 2. INEFFECTIVE ASSISTANCE DURING PRETRIAL MOTIONS

Derreza next contends his replacement counsel was ineffective for not filing a motion for hearing, pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1714, 12 L. Ed. 2d 908 (1964), concerning his statements in response to the "trooper's questions" made during the roadside stop. The district court held the record affirmatively refutes this claim. We agree. The record affirmatively reflects that Derreza's counsel did, in fact, file a *Jackson v. Denno* motion regarding the statements Derreza made to Trooper Grummert, and that following a hearing, the district court found that Derreza's statements to Trooper Grummert were made voluntarily. Because the record affirmatively refutes Derreza's claim of ineffective assistance, this claim fails.

### 3. INEFFECTIVE ASSISTANCE DURING TRIAL

Derreza next argues he received ineffective assistance of counsel during trial due to his replacement counsel failing to (a) renew his motion to suppress, (b) object at trial to matters that were the subject of a prior discovery ruling, (c) object to testimony on confrontation grounds, (d) locate and present witnesses governing the rental of the Impala where the drugs were found, (e) properly make a closing argument, and (f) properly argue for a new trial.

### (a) Failure to Renew Motion to Suppress

First, Derreza argues he was deprived of "appellate review of his motion to suppress" because his trial counsel failed to object at trial to preserve it. Specifically, Derreza alleges:

> Trial counsel failed to object at trial to the [S]tate offering evidence after the detention of the defendant prior to opening, the testimony of Trooper Pelster or the testimony of Sergeant Grummert. Furthermore, trial counsel failed to object at trial to the [S]tate's opening or the testimony of its witnesses regarding the search of the defendant's rented Impala by troopers of the Nebraska State Patrol after a canine indication.

The district court found that Derreza's pleading failed to identify what evidence was introduced at trial to which Derreza's counsel failed to object. Further, the court held Derreza's

pleading failed to allege facts which would demonstrate that, but for counsel's failures, the result of his appeal would be different. We agree. Alleging that his counsel filed a motion to suppress followed by a general allegation that his counsel failed to object to testimony of Trooper Pelster and Sergeant Grummert simply does not satisfy the specificity requirement of pleading set forth in *State v. Henderson*, 301 Neb. 633, 920 N.W.2d 246 (2018). In order to comply, Derreza was required to identify the subject raised in his motion that he desired to preserve, the specific testimony elicited by the specific witness which he alleges required an objection, the legal basis for the objection and why the objection would have been sustained, and how that series of events would have impacted the outcome of the case in a manner that prejudiced Derreza. Having failed to do so, this argument fails.

(b) Failure to Timely Object Regarding Discovery Rulings

Next, Derreza contends his trial counsel failed to timely object at trial to the court's ruling governing his discovery motion which requested the drug detection dog's veterinary and training records. Derreza asserts that this failure prevented him from having a "meaningful" appellate review of the denial of his motion for discovery. We first note Derreza fails to articulate any legal basis for his claim that his counsel was required to object at trial to preserve a discovery ruling by the court. See *State v. Podrazo*, 21 Neb. App. 489, 840 N.W.2d 898 (2013) (appellate court could review ruling on discovery motion notwithstanding counsel's failure to object during trial).

Regardless, the record reflects that despite Derreza's allegation that the court prohibited his counsel from obtaining veterinary and training records governing the drug detection dog, the record reflects the court actually sustained his counsel's motion to compel discovery governing these records and that Derreza's counsel was provided these records prior to trial. Because the record affirmatively refutes Derreza's argument, this argument fails.

(c) Failure to Object Based on Confrontation Clause

Derreza next argues that he was deprived meaningful appellate review as to the admissibility of Menter's statements testified to by Pelster and of Thomas' statements testified to by Grummert because his trial counsel failed to object on confrontation grounds. The district court found this contention failed because again the record refuted his contention. We agree.

Derreza's argument here relates to Pelster's testimony about the route Menter intended to follow across the country as described to him by Menter in response to Pelster's question. Grummert obtained and testified to a similar type, albeit inconsistent, statement obtained from Thomas. As to that testimony, the record clearly reflects that Derreza's counsel objected on the basis of *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), and the confrontation clause. The court then overruled the objections because the statements were deemed nonhearsay (a matter that was contested on direct appeal and determined to be a correct ruling of law). See *State v. Derreza*, No. A-16-527, 2017 WL 3485394 (Neb. App. Aug. 15, 2017) (selected for posting to court website). When ruling on Derreza's postconviction motion, the court found that "*Crawford* does not apply to nonhearsay coconspirator statements" and noted Derreza's claim was without merit. Because the record affirmatively refutes Derreza's claim, this argument fails.

### (d) Failure to Identify and Call Witnesses

Derreza next asserts that his counsel failed to investigate and call witnesses from the rental agency about Derreza renting the car on Menter's behalf and that had counsel called such witnesses, counsel could have deduced testimony that Derreza was not engaged in a criminal enterprise with Menter and further corroborated Thomas' and Menter's trial testimony. The district court ruled this alleged testimony would not have meaningfully altered the evidentiary picture and any impact on the jury's findings would have been isolated and trivial. We agree.

In *State v. Derreza*, No. A-16-527, 2017 WL 3485394 at 5 (Neb. App. Aug. 15, 2017), in summarizing why the original trial record contained sufficient evidence to support the jury's finding that Derreza knew of the methamphetamine in the Impala and had constructive possession over it, we stated:

> In this instance, the evidence proves Derreza, Menter, and Thomas were traveling together, in two separate cars. The record shows the Impala containing the methamphetamine was rented under Derreza's name and that the Tahoe in which Derreza was a passenger at the time of the stop was owned by Derreza's parents. The two vehicles were observed to be traveling together, as Trooper Pelster was hindered in stopping the speeding Impala by the Tahoe's actions. When questioned by Sergeant Grummert, Derreza stated he was traveling to Marshalltown, Iowa, from California. Menter, the driver of the Impala, presented Trooper Pelster his driver's license indicating he was from Marshalltown, Iowa, the Impala's California registration, and the rental agreement with Derreza's information. Additionally, although Derreza initially told Sergeant Grummert that he and [Thomas] were not traveling with anyone, he later told Sergeant Grummert that they were traveling with the Impala.

When viewed in relation to this record, Derreza's argument that his counsel was ineffective for failing to call additional witnesses to testify about the original rental of the Impala fails to demonstrate any prejudice to Derreza. The uncontradicted evidence demonstrates that Derreza rented the vehicle for Menter. Providing additional witnesses to establish that fact would simply have been cumulative of that established and uncontroverted fact. It was Derreza's rental arrangement, when coupled with his use of his parents' car to accompany Menter and Thomas on their trip, which establishes his constructive possession of the methamphetamine located in the Impala. Providing more evidence of the original rental arrangement was of no consequence. This argument fails.

### (e) Failure to Properly Make Closing Argument

Derreza next asserts that his replacement counsel was ineffective for not making a proper closing argument by failing to properly summarize the facts in a manner consistent with Derreza's innocence, in failing to argue legitimate deductions to the jury, and neglecting to advance reasonable inferences from the evidence and a consistent theme supporting Derreza's innocence. Derreza also argues his replacement counsel "failed to succinctly restate in a chronological format all of the inconsistencies in the trial testimony of the [S]tate's main witness Trooper Pelster or to properly highlight the testimony of Menter and Thomas at trial." Brief for appellant at 24.

The district court held that the record was insufficient to support this claim because there was no record of closing argument, and that, regardless, Derreza's claim is without merit because he does not allege how he was prejudiced by his counsel's alleged deficiencies. We agree. Because Derreza does not specifically plead how he was prejudiced by his trial counsel's alleged deficiencies, this argument fails.

### (f) Failure to File Motion for New Trial

Derreza next argues alleged deficiencies in connection with his counsel's handling of posttrial matters. Specifically, he argues, "[t]rial counsel failed to file a motion for new trial under Neb. Rev. Stat. § 29-2101 (Reissue 2016) alleging several grounds for a new trial. Trial counsel failed to ask [the district] court to consider its evidentiary objections and the issue of juror misconduct in a motion for a new trial. Also, counsel failed to investigate any evidence to support the motion for new trial. That counsel was deficient for failing to have a hearing on the motion for new trial." Brief for appellant at 24.

In response, the district court found that these pleadings of mere conclusions of law or fact are not sufficient to warrant an evidentiary hearing, and we agree. These threadbare conclusory allegations are insufficient in specifying with particularity the deficiencies of counsel in relation to a post-trial motion, or in establishing any prejudice in failing to file them. This argument fails.

### 4. INEFFECTIVE ASSISTANCE DURING DIRECT APPEAL

Lastly, Derreza argues his appellate counsel, who was also his replacement counsel during trial and sentencing, was ineffective in failing to adequately appeal the district court's errors in instructing the jury and in failing to include Derreza's proposed jury instructions in the record on direct appeal. Derreza alleges that his appellate counsel failed to provide a complete record to the appellate court on direct appeal which denied him his constitutional right to effective assistance of counsel on direct appeal. Derreza expounds that due to this counsel's failures, the appellate court was unable to conduct an effective appellate review of his trial counsel's objections to the district court's jury instructions and Derreza's proposed jury instructions.

Although Derreza does not specify the jury instruction he is referring to, we surmise he refers to his counsel's challenge on direct appeal to the court's proposed instruction on "possession" contained with instruction number 5. This court refused to address the assignment of error in connection with Derreza's direct appeal because the instruction was not made part of the record. In response, the district court denied Derrezza an evidentiary hearing while finding that the instruction provided by the district court was taken directly from NJI2d Crim. 4.2 and that Derreza failed to plead how the instruction in any way was incorrect. We agree.

To address Derreza's assigned error in this postconviction appeal, we begin by noting that "[w]hen analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant. That is, courts begin by assessing the strength of the claim appellate counsel purportedly failed to raise." *State v. Fox*, 286 Neb. 956, 964, 840 N.W.2d 479, 486 (2013). "Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Id.* at 965, 840 N.W.2d at 486.

- 11 -

The issue we must resolve here is whether the errors regarding the jury instructions actually prejudiced Derreza. The Nebraska Supreme Court has articulated:

> To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

*State v. Case*, 304 Neb. 829, 842, 937 N.W.2d 216, 225 (2020). Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019).

Derreza argues the district court erred in giving jury instruction No. 5, which provided a definition for the term "possession" and was a pattern jury instruction. Derreza's proposed jury instruction altered the definition of "possession" as follows: "'Possession of a controlled substance' means knowing of the nature and character of the controlled substance and either knowingly having it on one's person or knowing of its presence and having the right to exercise control or dominion over the controlled substance." The district court refused to give Derreza's proposed jury instruction, instead using the pattern jury instruction, which read as follows: "'Possession' of a controlled substance means either knowingly having it on one's person or knowing of the object's presence and having control over the object." See NJI2d Crim. 4.2.

In *State v. Valentine*, 27 Neb. App. 725, 936 N.W.2d 16 (2019), we determined the district court did not err in using a pattern jury instruction defining possession instead of utilizing defendant's proposed jury instruction. We explained:

> Whenever an applicable instruction may be taken from the Nebraska Jury Instructions, that instruction is the one which should usually be given to the jury in a criminal case. *State v. Morgan*, 286 Neb. 556, 837 N.W.2d 543 (2013). In fact, recently, in *State v. Castellanos*, 26 Neb. App. 310, 918 N.W.2d 345 (2018), this court upheld a jury instruction defining possession which was directly patterned after NJI2d Crim. 4.2. In *Castellanos*, the defendant requested that the district court include the following language when instructing the jury regarding the definition of possession: "'The Defendant's mere presence in an area where items were ultimately discovered is not enough to establish that the defendant was in "possession" of said items.'" 26 Neb. App. at 326, 918 N.W.2d at 358. The defendant also requested that the court instruct the jury as follows: "'Assuming an item is not found on the defendant's person, the defendant's proximity to the item, standing alone, is insufficient to prove "possession."'" *Id*. We affirmed the district court's decision to rely on the pattern jury instruction defining the term "possession" rather than using the defendant's proposed definition.

*State v. Valentine*, 27 Neb. App. at 746-47, 936 N.W.2d at 31-32.

Like the defendant in *Valentine*, Derreza requested that the district court provide a more narrow definition of possession than the pattern jury instruction. While Derreza's proposed jury instruction was not an incorrect statement of the law, Derreza cannot establish that he was prejudiced by the district court's refusal to use his proposed jury instruction. It is clear the district court properly instructed the jury on the definition of "possession" and the district court did not

err in refusing to give Derreza's proposed jury instruction. Accordingly, this assignment of error fails.

## VI. CONCLUSION

For the foregoing reasons, we conclude the district court did not err in denying Derreza an evidentiary hearing on allegations that his trial counsel was ineffective in matters related to pretrial investigations, pretrial motions, trial proceedings, and direct appeal or in finding that his claims regarding his original trial counsel were procedurally barred. We affirm the district court's denial of postconviction relief without an evidentiary hearing.

AFFIRMED.